ROSE SIMONE, as Administratrix of ANGELO SIMONE, Deceased, Appellant, *v.* WILLIAM B. KIRK et al., Respondents.

NEGLIGENCE — LIABILITY OF MASTER WHEN SAFE PLACE TO WORK IN BECOMES UNSAFE — WHEN FOREMAN IS NOT A FELLOW-SERVANT.

Where, upon the trial of an action to recover damages for the death of a laborer alleged to have been caused by the negligence of his employers, it appears that, at the time of the accident which caused his death, the defendants were contractors engaged in excavating material for railroad ballast from a large bank composed of ashes and cinders in which solid lumps of lime paste, unfit for ballast, were occasionally found and were removed either by loosening them from the top and prying them off, or by undermining them and causing them to fall down, and when partially undermined became unsafe and liable to fall at any time — that such work was in charge of a competent foreman, who was authorized to hire men and set them at work, discharge them and direct the work — that the decedent was hired by the foreman several weeks after the commencement of the work and assigned to duty with the night gang, with which he worked one night and part of the next, shoveling loose ashes and cinders into cars, until he reached a point some distance from the place where he began to work and where he had never been before — that in a dark place, dimly lighted by a distant lamp, a heavy mass of lime paste, partially undermined and cracked at the top.

projected several feet from the bank and was eight or ten feet from the ground beneath it, in which condition it had been left by the day gang three days before, with no support under it and with nothing to give warning of the danger, all of which was known to the foreman, who was familiar with the situation — that when this place was reached the decedent was ordered by the foreman, without any warning of the dangerous situation, to get a pick and go under the projection and loosen material for the next load; that decedent, having no knowledge of the danger, went to work under the projection as directed, and while so engaged was crushed to death by the fall thereof.

*Held*, that the defendants were liable; that it was their duty to inspect the progress of the work with such care and diligence as the nature of the materials and the danger of the work required, and when any place became dangerous, because any of such lumps of lime paste became undermined and, therefore, liable to fall, to give warning of such danger to their servants having no knowledge thereof and required to work at such place; that although the defendants had the right to delegate and intrust the conduct of such duty to a competent foreman, they could not do so without being liable for the manner in which it was performed, and whoever in fact performed or attempted to perform such duty stood for the defendants as their *alter ego*, and what he did had the same effect in law as if they had done it in person;

Also *held*, that the fact that, as to some of his duties, the foreman was a fellow-servant of decedent at the time of his injury and death did not relieve the defendants from liability, since, in hiring decedent and setting him at work, the foreman was not discharging a servant's, but a master's duty, and decedent did not become a fellow-servant of the foreman until the latter had hired him and set him at work, and it was at this time, when the relation of master and servant first began, that the law required due diligence on the part of the defendants to furnish a safe place for decedent to work; a sufficient period of time having elapsed between the day when the dangerous situation arose and the day when decedent was put to work at the dangerous place to enable the defendants by careful inspection to discover the danger, they were chargeable with knowledge thereof, independent of the knowledge of the foreman.

*Simone* v. *Kirk*, 57 App. Div. 461, reversed.

(Argued November 20, 1902; decided December 9, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 18, 1901, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial.

This action was brought to recover damages alleged to have been caused by the negligence of the defendants resulting in

the death of the plaintiff's intestate. At the trial the jury rendered a verdict for the plaintiff, but the judgment entered thereon was reversed by the Appellate Division. The order of reversal stated that it was founded upon questions of law only, "the court having examined the facts and found no error therein."

The facts, so far as material, are stated in the opinion.

*W. J. McClusky* and *S. E. McClusky* for appellant. The defendants were guilty of negligence, in that they failed to furnish, in the first instance, a reasonably safe place for plaintiff's intestate to perform his duties while in their employment. (*Eustland* v. *Clarke*, 165 N. Y. 420; *Finn* v. *Cassidy*, 165 N. Y. 584; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 280; *Kranz* v. *L. I. R. R. Co.*, 123 N. Y. 1; *Span* v. *Ely*, 8 Hun, 258; *Buckley* v. *P. H. I. O. Co.*, 17 N. Y. S. R. 438; 117 N. Y. 645; *Felice* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 345; *Stuber* v. *McEntee*, 142 N. Y. 200; *Berry* v. *A. S. Co.*, 64 N. Y. Supp. 292.) The defendants were guilty of negligence in adopting an improper method in removing the cinders and ashes from the bank, and in their failure to have properly inspected the bank at the place where plaintiff's intestate was injured. (*McCarthy* v. *Washburn*, 42 App. Div. 252; *Doing* v. *N. Y., O. & W. Ry. Co.*, 151 N. Y. 579; *Davidson* v. *Cornell*, 132 N. Y. 232.) The plaintiff's intestate was free from contributory negligence, and that question was properly submitted to the jury. (*Stuber* v. *McEntee*, 142 N. Y. 204; *Johnson* v. *H. R. R. Co.*, 20 N. Y. 65; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Kain* v. *Smith*, 89 N. Y. 375; *Wallace* v. *C. V. R. R. Co.*, 138 N. Y. 302.)

*Jerome L. Cheney* for respondents. The submission to the jury of the question of negligence on the part of the defendants on the ground of failure to furnish a safe place to work was error. (*Perry* v. *Rogers*, 157 N. Y. 251; 91 Hun, 243; *Capasso* v. *Woolfolk*, 163 N. Y. 473; *Di Vito* v. *Crage*, 165 N. Y. 379; *Loughlin* v. *State of N. Y.*, 105 N. Y. 159;

*Cullen* v. *Norton*, 126 N. Y. 1; *Hussey* v. *Coger*, 112 N. Y. 614; *Cregan* v. *Marston*, 126 N. Y. 568; *Quigley* v. *Levering*, 167 N. Y. 58; *Miller* v. *Thomas*, 15 App. Div. 105.) The contention of appellant that the excavation at the place where the accident occurred was actually completed before the intestate was employed is untrue in fact, being not only unsupported by the evidence, but contrary to the evidence; and the conclusion of law sought to be derived therefrom is unsound· and untenable. (*Butler* v. *Townsend*, 126 N. Y. 105; *McCone* v. *Gallagher*, 16 App. Div. 272; *Murphy* v. *B. A. R. R. Co.*, 88 N. Y. 146; *Wilson* v. *Merry*, L. R. [1 Sc. App.] 326; *Haley* v. *Keim*, 151 Penn. St. 117; *Burns* v. *Sennett*, 99 Cal. 363.) Appellant's contention that defendants were negligent in adopting an improper method of work in this case is not well taken either in point of law or of fact. (*McCarthy* v. *Washburn*, 42 App. Div. 252; *Doing* v. *N. Y., O. & W. R. R. Co.*, 151 N. Y. 579; *O'Sullivan* v. *Flynn*, 67 App. Div. 516; *Klupp* v. *United Ice Lines*, 39 N. Y. S. R. 782; *Kehler* v. *Schwenk*, 144 Penn. St. 348; *Sisco* v. *L. V. Co.*, 145 N. Y. 296; *Davidson* v. *Cornell*, 132 N. Y. 228; *Doomer* v. *D. & H. C. Co.*, 171 Penn. St. 581.) The court erred in submitting to the jury the question whether the deceased assumed the risk of the danger resulting in his injury. (*Kinsley* v. *Pratt*, 148 N. Y. 372; *Crown* v. *Orr*, 140 N. Y. 450.)

VANN, J. In the spring of 1899 the defendants were engaged in removing ashes and cinders from the " Solvay Dump," so called, and using the same to ballast a railroad which they were constructing between the city of Syracuse and the village of Baldwinsville. The " Solvay Dump " was a great bank of refuse material composed chiefly of loose ashes and cinders which were fit for ballast, and masses of lime paste which was not fit for that use. The pile on its northerly side extended between 300 and 350 feet in an easterly and westerly direction, and it was ·from 15 to 25 feet in height.· The lime paste was in solid lumps, irregular in shape

and varying in size, which were found occasionally in the bank of refuse and were removed either by loosening them from the top and prying them off, or by undermining them from the bottom and causing them to fall down. No use was made of them, but when they were dislodged they were put one side so as to be out of the way. The work was in charge of a competent foreman, who was authorized to hire the men, set them at work, discharge them and direct how the work should be done. Two sets of men, one in the day-time and the other at night, were employed to shovel the ashes and cinders into cars which ran upon temporary tracks near the foot of the bank.

Angelo Simone, the plaintiff's intestate, was hired by the foreman several weeks after the commencement of the work, and was assigned to duty with the night gang. He worked one night at the westerly end of the bank shoveling the loose ashes and cinders into the cars. The next night he continued to work as a shoveler until about three o'clock in the morning, when the gang, working toward the east along the north side of the bank, had reached a point about 200 feet from the place where he was first set at work. At this point there was a solid mass of lime paste several feet thick, triangular in shape, the base about ten feet in width embedded in the bank, and the sides about eight feet long ending in a point three feet wide. This heavy mass, which was cracked on the top, projected four feet from the bank, and was eight or ten feet above the surface of the ground. It had been left in this condition, as the jury might have found, by the day gang three days before, with no support under it and nothing to warn of the danger, as the foreman knew. Simone had never been in that place before. He had received no warning as to the dangerous situation at that point, or as to the danger liable to arise at any point from the huge chunks of lime paste scattered through the bank of refuse. It was dark when he reached the point in question. The locality was dimly lighted, the nearest light being 200 feet away and he neither knew nor was he chargeable with knowledge of the danger.

The foreman was familiar with the situation, but when warned of similar dangers before he made light of them, saying, "it is nothing." As the workmen reached this place the foreman told Simone to "get a pick and go under there and pick so we can have some stuff ready for the next load." Simone, believing and having the right to believe that the place was safe, laid down his shovel, walked back for a pick and went to work under the projection as directed. In two or three minutes it fell upon him and crushed him to death.

While there was a conflict of evidence, the jury could have found the facts as stated, and it is presumed from their general verdict that they did so. They were instructed by the trial judge that the defendants were bound to use reasonable care to furnish a safe place for the plaintiff's intestate to work in, and that if they did not furnish such a place as a reasonably careful and prudent man would have furnished under the same circumstances, they were liable to the plaintiff in damages, provided the projection had remained where it was long enough to give the master notice of its condition, and provided also that the intestate was himself free from negligence and had not assumed the risk of the danger he encountered. The jury found for the plaintiff, but the Appellate Division reversed upon the ground that, as the pile of refuse was reasonably safe in the first instance and became unsafe owing to the manner in which the details of the work were performed under the direction of the foreman, the defendants were not guilty of actionable negligence.

As the learned Appellate Division approved of the facts as found and reversed upon questions of law only, their order of reversal cannot stand unless some error of law was committed by the trial court. While the legal principles governing the subject are well settled, the difficulty of applying those principles to the facts before us is so great as to lead to a difference of opinion between the members of the court. A majority of my associates are in favor of reversing the order appealed from and by their direction I will endeavor to briefly state our reasons for reaching this conclusion.

The defendants were carrying on a lawful business and, with certain limitations, they had the right to intrust the conduct thereof to a competent foreman. If they intrusted to his care all things relating to the business, as to some of those things he was a mere servant doing a servant's work, but as to others he was a master doing a master's work. A servant's work, as such, can be delegated to a competent foreman and if other servants are injured through his negligence in doing that work the master is not liable, because the negligence of a fellow-servant is not the negligence of the master. A master's work, as such, however, cannot be delegated so as to free him from liability, because the work that the law says is for him to do must be done with due care or he is liable for the consequences, whether he does it himself or through another. If he deputes the duty to a foreman and it is carefully done, he is safe, but if it is negligently done, the law holds him liable for the damages naturally resulting, even if the foreman was fully competent.

It is the duty of a master in employing servants to use reasonable care to provide them with proper appliances and a safe place to work, and this duty is so firmly fastened upon him by law that he cannot delegate it without liability for the negligence of the one to whom he intrusts it. The duty of using reasonable care in inspecting the place where servants are set at work is also the master's duty which he must properly discharge at his peril, either personally or through another. Certain work is inherently dangerous, and yet the master has the right to hire servants to do it. In such cases, however, unless the danger is obvious to an ordinary observer, it is his duty to give them due warning, so that they may refuse to work if they do not wish to run the risk, and proper instructions so that if they enter upon the work they may be able to take care of themselves. (*Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y. 368; *Benzing* v. *Steinway & Sons*, 101 N. Y. 547; *McGovern* v. *Central Vermont R. R. Co.*, 123 N. Y. 280; *Gates* v. *State of N. Y.*, 128 N. Y. 221, 226; *Eastland* v. *Clarke*, 165 N. Y. 420, 428; *Finn* v. *Cas-*

*sidy,* 165 N. Y. 584 ; *Dowd* v. *N. Y., Ont.· & W. Ry. Co.,* 170 N. Y. 459.)

There is no complaint in this action as to want of care on the part of the defendants in furnishing suitable appliances for their servants to work with. The crucial question is whether the defendants used due diligence to furnish a safe place, in so inspecting it as to keep it reasonably safe and in properly warning the plaintiff's intestate. These duties were for the defendants to discharge as masters, and they could not delegate them even to a competent foreman without being responsible for the manner in which they were performed. Whoever in fact performed or attempted to perform them, stood for the defendants as their *alter ego,* and what he did had the same effect in law as if they had done it in person. The place furnished for the plaintiff's intestate to work in was not safe, yet he was not warned, and, ignorant of the danger, obeyed orders and met his death. It was unsafe when they set him at work and they knew it, or should have known it.

It is, however, claimed that the place was safe when the work was commenced and that it became unsafe as the work progressed, owing to the method of doing it. That the inert mass of refuse was safe until disturbed is doubtless true, but as soon as it was interfered with, owing to the nature of the materials of which it was composed, it was liable to become unsafe at any point and at any time. The duty of inspection should have been discharged in the light of this fact, for inspection must be reasonable, and, hence, adapted to the circumstances, not only as to thoroughness but as to frequency. If this accident had happened on the first day that the defendants began to remove the refuse a different question would have been presented from the one now before us. The work, however, had progressed for several weeks before Simone was employed, and proper inspection, as the jury might have found, would have disclosed that the place where the men worked was frequently unsafe, and that the point where Simone was killed had been unsafe for at least three days. When a new servant was hired by the defendants new duties were cast

upon them with reference to him, for they were bound to furnish him a safe place to work when they set him at work. In hiring Simone and setting him at work the foreman was not discharging a servant's duty but a master's, and when he set him at work on the west end of the pile he knew of the danger existing at the east end, but he did not protect the place by supports, nor cause it to be well lighted, nor warn him, nor take any precaution required by the situation. He was not a fellow-servant of Simone when the danger was created, for the latter was not then a servant of the defendants, and he did not become a fellow-servant until after the foreman had hired him and set him at work. (*Eastland* v. *Clarke, supra.*) As to Simone, at least, it was not enough that the place was safe some weeks before when other men were hired and put at work there, for reasonable care was due from the defendants to provide a safe place for the new servant to work in and to warn him of the danger he was liable to encounter. When the relation of master and servant first began between the defendants and Simone was the time when the law required due diligence on their part to furnish him a safe place to work.

This is not like the case assumed for the purpose of argument in *Butler* v. *Townsend* (126 N. Y. 105, 110), where one set of workmen built the scaffold and another set used it, but all were engaged in a common employment for the same master during the period both of construction and user. In the case before us, when the dangerous situation was created the plaintiff's intestate was not the servant of the defendants, and, hence, not a fellow-servant of the foreman.

A sufficient period of time had elapsed between the day when the dangerous situation arose and the day when Simone was injured to enable the masters, by careful inspection, to discover the facts, and careless inspection would not relieve them of liability. Independent of the knowledge of the foreman, therefore, as the jury might have found, the defendants knew or were charged with knowledge of this dangerous projection. Can a man, hired with such knowledge and set

at work on that pile, be said to have been furnished with a safe place in which to work? As to Simone, it was the same as if the work had been abandoned months before and a new set of men employed, himself among them, on the day he began to work. Even if as to the servants employed when the work was first commenced, weeks before the accident, the rule is as was held below, as to Simone who was employed after the danger arose and after the defendants knew of it, that rule is not applicable, because as to him it was the same as if the business had commenced on the day that he was first employed. He had the right to a reasonably safe place, in view of all the circumstances, and to assume that the place furnished was reasonably safe when he began to work, or else due warning should have been given so that he could protect himself or refuse to work. This was not done, and yet this was the work of the defendants, as masters, which the law does not permit them to delegate to a foreman, unless the latter does it without negligence. When the foreman employed Simone and set him at work on that pile without warning, it was the same in legal effect as if one of the defendants in person had done it knowing of the danger as it then existed.

We have examined the cases relied upon by the respondents, but we find none which, when carefully studied, sustain by the decision actually made, as contrasted with unnecessary expressions in some of the opinions, the position taken by the Appellate Division. In those chiefly relied upon, the servant, with full knowledge of the danger, was engaged in the work of making a safe place for himself and his fellow-workmen, and the master had the right to assign him to that duty. We think the case was properly submitted to the jury, and that it was for them to pass upon the questions relating to the negligence of the defendants, the contributory negligence of the plaintiff's intestate and the claim that he assumed the risk of the danger which caused his death. We find no exception which authorized a reversal by the court below, and we, therefore, reverse their order and affirm the judgment rendered by the trial court, with costs.

Parker, Ch. J., and Gray and Werner, JJ. (dissenting), say : When this case was before the Appellate Division that court unanimously reached the conclusion that observance of the rule of *stare decisis* required a reversal of the judgment. *Perry* v. *Rogers* (157 N. Y. 251); *Capasso* v. *Woolfolk* (163 N. Y. 472); *Di Vito* v. *Crage* (165 N. Y. 378) were some of the cases that seemed to it to compel the decision made. A re-examination of these familiar cases persuades us that both in their letter and spirit they did support and command the judgment reached.

Therefore we vote to affirm the judgment.

Bartlett, Haight and Martin, JJ., concur with Vann, J.; Parker, Ch. J., Gray and Werner, JJ., dissent in memorandum.

Order reversed, etc. _____