### MADIGAN v. OCEANIC STEAM NAV. CO.

(Supreme Court, Appellate Division, First Department. April 17, 1903.)

1. INJURY TO EMPLOYÉ—NEGLIGENCE OF MASTER—FELLOW SERVANTS.
   Negligence of an employé to whom the master delegated the duty of putting lights in the hold of a barge, when it became dark enough to require it, to make it a safe place to work in, in not doing so, whereby an employé was injured, is that of the master, and not of a fellow servant.

2. SAME—ASSUMPTION OF RISK.
   A person working in the hold of a barge may not, as a matter of law, be held to have assumed the risk of working there without lights, which should have been furnished, when it became so dark that the person who should have guided the bucket being raised from the hold failed to see it was rising, and so did not guide it, whereby the person in the hold was killed.
   Van Brunt, P. J., and Ingraham, J., dissenting.

---

1. See Master and Servant, vol. 34, Cent. Dig. § 393.
   81 N.Y.S.—45.

Appeal from Trial Term, New York County.

Action by Mary Madigan, administratrix, against the Oceanic Steam Navigation Company. From an order setting aside the verdict for plaintiff and granting a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Richard T. Greene, for appellant.

Clarence Bishop Smith, for respondent.

HATCH, J. The plaintiff's husband, Patrick Madigan, a longshoreman, was employed by the defendant to assist in unloading a coal barge and transferring the coal to the steamer Oceanic, by the side of which the barge was lying. Shortly before 6 o'clock in the evening of the 25th day of October, 1900, the unloading had proceeded so far as to reach nearly to the bottom of the barge, a distance of about eight feet. Plaintiff's intestate and a fellow workman were engaged in filling buckets, which were lowered into the hold from a derrick, which swung it over the decks of the steamer and the barge. The captain of the barge was employed by the owners thereof, and had charge of the same, but in the matter of unloading he was subject to the direction of the defendant. He stood on the deck of the barge above the open hatchway, through which the buckets were raised and lowered, and controlled the same in their ascent by means of a guy rope, which he held in his hand; as the bucket started to lift, he wound the rope around a pin in the side of the barge, letting the slack run out, which prevented the bucket from swaying and coming in contact with the sides of the barge. The evidence upon the part of the plaintiff tended to establish that it was dark in the hold at the time of the accident, the subject of the action, and that the captain could not see the bucket, when it started to rise, by reason of the darkness. He did not guide the same with the rope as he had theretofore done, in consequence of which the bucket swung around, struck plaintiff's intestate, jamming his head against a bolt that was projecting from the side of the barge, driving the same through his skull, and killing him almost instantly. It appeared upon the trial that one McDonald was employed by the defendant as coal foreman, and had been so employed for eight or nine years. He had general charge of the business, and of the men engaged in unloading the barge. It further appeared that the defendant furnished lights for the purpose of use in the barge as necessity required, and that whether the lights should be used on it or not was left by the defendant to the discretion of McDonald. When it became dark in the hold, so that the workmen could not see sufficiently plain to perform the duties which devolved upon them, it was expected that lights would be so placed in the interior of the barge as would enable the workmen to control the movement of the buckets, and steady them in place as they were raised and lowered. There were no lights in the hold of the barge at the time of the accident. McDonald testified that the lights were ready, but that he did not think it necessary to put them up. The evidence authorized the jury to find that at the time when the accident happened it had become so dark that the captain of the barge was unable to see

what was being done in the hold, or to determine when the signal was given to raise the bucket, and that by reason of such condition he was not able to determine when it was necessary to wrap the guy rope around the pin, and thus prevent the swinging of the bucket. The case was submitted to the jury upon the theory that, if the jury found that McDonald represented the defendant in respect of this work, and had full control of the same, then he was to be regarded as the representative of the defendant, and its alter ego in the performance of the work, and, if so, negligence might be predicated of a failure to exercise ordinary care to keep the place so lighted as to enable the work to be safely done, and therefrom find that the defendant, if there was failure to discharge such duty by McDonald, was liable for an injury sustained by reason of the unsafe place in' which the work was being transacted, created by the omission to supply proper lights. Upon such subm'ssion the jury found a verdict in favor of the plaintiff for the sum of $2,500, and upon motion thereafter made the court set aside the same, and ordered a new trial, based upon the ground that McDonald was a fellow servant of the deceased; that the failure to furnish lights, if required, was an act of negligence upon his part, for which no recovery could be had.

It is now firmly established in the law of negligence that it is the duty of the master in employing servants to use reasonable care to provide proper appliances and a safe place to work. This duty is so firmly fixed upon the master that he cannot delegate its performance to a servant, and escape liability, if the servant, whatever be his grade, neglect to properly perform the same, and injury result therefrom to a person to whom he owes such duty. Simone v. Kirk, 173 N. Y. 7, 65 N. E. 739; Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521. It is evident in the present case that the jury were authorized to find that lights were necessary in the hold of the barge in order to make it a safe place for the prosecution of the work then being carried on. The circumstances which produced this accident authorized the jury to find that it was solely the result of darkness to such an extent that the captain of the barge could not see when to take the precaution of controlling the bucket by means of the guy rope, and that his inability so to see caused him to omit the usual precautions which he had theretofore taken; that such failure upon his part permitted the bucket to swing and thus produced the injury resulting in the death of plaintiff's intestate. This condition was created by the failure of McDonald, who represented the master, in omitting to place lights in the hold of the barge, and thereby rendered such place unsafe and dangerous. The duty to place the lights devolved upon the master. McDonald stood in the relation of its alter ego, and his negligence became the negligence of the defendant. Pantzer v. Tilly Foster I. M. Co., 99 N. Y. 368, 2 N. E. 24.

Nor can the plaintiff be defeated in her right to recover upon the ground that her intestate assumed the risks incident to the situation. The darkness came gradually in the prosecution of the work. The deceased had the right to rely upon the performance by the master of the duty which was devo[ ]ed upon it. He doubtless could see in the hold sufficiently to fill the buckets, and his eyes, becoming used to the

dim light, might enable him to see much better than the person in charge of the guy rope, and he be without notice that the latter could not see. It cannot be said, therefore, as matter of law, that he assumed the risk of the inability of the captain of the barge to see. Kane v. Smith, 89 N. Y. 375. Nor is there basis to make a claim of contributory negligence, as it does not appear that any act of the deceased contributed to the accident. Besides, the questions of risk and contributory negligence were fairly submitted to the jury for their determination, and they have negatived both.

It follows that the order granting a new trial should be reversed, and judgment ordered for the plaintiff upon the verdict, with costs. All concur, except VAN BRUNT, P. J., and INGRAHAM, J., who dissent.

