MARY MADIGAN, as Administratrix, etc., of PATRICK MADIGAN,
Deceased, Appellant, *v.* THE OCEANIC STEAM NAVIGATION COM-
PANY, LIMITED, Respondent.

*Negligence — death of a longshoreman, struck by a coal bucket, while in the hold of
a vessel — the person charged with the duty of placing lights in the hold is the alter
ego of the master — when the neglect of the person injured to notice the necessity
therefor is not contributory negligence.*

In an action brought to recover damages resulting from the death of the plain-
tiff's intestate, it appeared that the intestate was a longshoreman employed by
the defendant, a steamship company, to assist in transferring coal from a barge
to one of the defendant's steamers; that the barge was owned by third parties
and that the captain thereof was employed by such third parties, but that, in
the matter of unloading the barge, he was subject to the direction of the
defendant; that the defendant employed one McDonald as a coal foreman, and
gave him general charge of the loading of coal and of the men engaged in
unloading the barge; that the defendant furnished lights to be used in the
hold of the barge when it became too dark for the workmen to perform the
duties which devolved upon them, and left it to the discretion of McDonald as
to when the lights should be used.

On the day of the accident the intestate and a fellow-workman were engaged in
the hold of the barge in filling the buckets in which the coal was transferred
to the steamship. The captain of the barge stood on the deck thereof and con-
trolled the swing of the buckets by means of a guy rope. During the progress
of the work it became so dark in the hold that the captain could not see the
bucket when it started to rise, and on one occasion he did not guide the bucket
with the guy rope as he had theretofore done, in consequence of which
the bucket swung around, jamming the intestate's head against a bolt which
projected from the side of the barge and killing him almost instantly.

There were no lights in the hold of the barge at the time of the accident.
McDonald testified that, although the lights were ready, he did not think it
necessary to place them in position.

*Held,* that the duty to place the lights in position devolved upon the defendant,
and that, as this duty had been delegated to McDonald, McDonald was, to this
extent, the *alter ego* of the defendant, and that his negligence in failing to place
the lights in position was the negligence of the defendant;

That, as the darkness came on gradually, the jury might find that the intestate
had become accustomed to the dim light and that he did not have notice that
the captain of the barge could not see, and that, therefore, it could not be said,
as matter of law, that the intestate assumed the risk of the captain's inability
to see.

VAN BRUNT, P. J., and INGRAHAM, J., dissented.

APPEAL by the plaintiff, Mary Madigan, as administratrix, etc., of Patrick Madigan, deceased, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 7th day of May, 1902, setting aside the verdict of a jury in favor of the plaintiff and granting the defendant's motion for a new trial made upon the minutes.

*Richard T. Greene,* for the appellant.

*Clarence Bishop Smith,* for the respondent.

HATCH, J. :

The plaintiff's husband, Patrick Madigan, a longshoreman, was employed by the defendant to assist in unloading a coal barge and transferring the coal to the steamer *Oceanic,* by the side of which the barge was lying. Shortly before six o'clock in the evening of the 25th day of October, 1900, the unloading had proceeded so far as to reach nearly to the bottom of the barge, a distance of about eight feet. Plaintiff's intestate and a fellow-workman were engaged in filling buckets, which were lowered into the hold from a derrick, which swung it over the decks of the steamer and the barge. The captain of the barge was employed by the owners thereof and had charge of the same, but in the matter of unloading he was subject to the direction of the defendant. He stood on the deck of the barge above the open hatchway, through which the buckets were raised and lowered, and controlled the same in their ascent by means of a guy rope, which he held in his hand ; as the bucket started to lift he wound the rope around a pin in the side of the barge, letting the slack run out, which prevented the bucket from swaying and coming in contact with the sides of the barge. The evidence upon the part of the plaintiff tended to establish that it was dark in the hold at the time of the accident, the subject of the action, and that the captain could not see the bucket when it started to rise by reason of the darkness. He did not guide the same with the rope as he had theretofore done, in consequence of which the bucket swung around, struck plaintiff's intestate, jamming his head against a bolt that was projecting from the side of the barge, driving the same through his

skull and killing him almost instantly. It appeared upon the trial that one McDonald was employed by the defendant as coal foreman, and had been so employed for eight or nine years. He had general charge of the business and of the men engaged in unloading the barge. It further appeared that the defendant furnished lights for the purpose of use in the barge, as necessity required, and that whether the lights should be used or not was left by the defendant to the discretion of McDonald. When it became dark in the hold, so that the workmen could not see sufficiently plain to perform the duties which devolved upon them, it was expected that lights would be so placed in the interior of the barge as would enable the workmen to control the movement of the buckets and steady them in place as they were raised and lowered. There were no lights in the hold of the barge at the time of the accident. McDonald testified that the lights were ready, but that he did not think it necessary to put them up. The evidence authorized the jury to find that at the time when the accident happened it had become so dark that the captain of the barge was unable to see what was being done in the hold, or to determine when the signal was given to raise the bucket, and that by reason of such condition he was not able to determine when it was necessary to wrap the guy rope around the pin and thus prevent the swinging of the bucket. The case was submitted to the jury upon the theory that if the jury found that McDonald represented the defendant in respect of this work, and had full control of the same, then he was to be regarded as the representative of the defendant and its *alter ego* in the performance of the work, and, if so, negligence might be predicated of a failure to exercise ordinary care to keep the place so lighted as to enable the work to be safely done, and they might therefrom find that the defendant, if there was failure to discharge such duty by McDonald, was liable for an injury sustained by reason of the unsafe place in which the work was being transacted, created by the omission to supply proper lights. Upon such submission the jury found a verdict in favor of the plaintiff for the sum of $2,500, and upon motion thereafter made the court set aside the same and ordered a new trial, based upon the ground that McDonald was a fellow-servant of the deceased; that the failure to

furnish lights, if required, was an act of negligence upon his part, for which no recovery could be had.

It is now firmly established in the law of negligence that it is the duty of the master in employing servants to use reasonable care to provide proper appliances and a safe place to work. This duty is so firmly fixed upon the master that he cannot delegate its performance to a servant and escape liability, if the servant, whatever be his grade, neglect to properly perform the same and injury result therefrom to a person to whom he owes such duty. (*Simone* v. *Kirk*, 173 N. Y. 7; *Crispin* v. *Babbitt*, 81 id. 516.) It is evident, in the present case, that the jury were authorized to find that lights were necessary in the hold of the barge in order to make it a safe place for the prosecution of the work then being carried on. The circumstances which produced this accident authorized the jury to find that it was solely the result of darkness to such an extent that the captain of the barge could not see when to take the precaution of controlling the bucket by means of the guy rope, and that his inability so to see caused him to omit the usual precautions which he had theretofore taken; that such failure upon his part permitted the bucket to swing and thus produced the injury resulting in the death of plaintiff's intestate. This condition was created by the failure of McDonald, who represented the master, in omitting to place lights in the hold of the barge and thereby rendered such place unsafe and dangerous. The duty to place the lights devolved upon the master; McDonald stood in the relation of its *alter ego*, and his negligence became the negligence of the defendant. (*Pantzar* v. *Tilly Foster I. M. Co.*, 99 N. Y. 368.)

Nor can the plaintiff be defeated in her right to recover upon the ground that her intestate assumed the risks incident to the situation. The darkness came gradually in the prosecution of the work. The deceased had the right to rely upon the performance by the master of the duty which was devolved upon it. He doubtless could see in the hold sufficiently to fill the buckets, and his eyes becoming used to the dim light might enable him to see much better than the person in charge of the guy rope and he be without notice that the latter could not see. It cannot be said, therefore, as matter of law, that he assumed the risk of the inability of the captain of the barge

FIRST DEPARTMENT, APRIL TERM, 1903.　　　[Vol. 82.

to see. (*Kain* v. *Smith*, 89 N. Y. 375.) Nor is there basis to make a claim of contributory negligence, as it does not appear that any act of the deceased contributed to the accident; besides, the questions of risk and contributory negligence were fairly submitted to the jury for their determination, and they have negatived both.

It follows that the order granting a new trial should be reversed and judgment ordered for the plaintiff upon the verdict, with costs.

PATTERSON and O'BRIEN, JJ., concurred; VAN BRUNT, P. J., and INGRAHAM, J., dissented.

Order reversed and judgment ordered on verdict, with costs.