a deposition taken before trial. On the other hand, the exigencies of a case frequently require a party to call his adversary. In such case he is permitted to cross-examine the witness, and, although disappointed in the testimony given, may yet be able to elicit some fact warranting an inference which, with the other testimony he has, may enable him to make out his case or defense. Although ignorant of what his adversary will swear to, as usually must be the case, he may still desire to take his deposition for use upon the trial. If so, pursuant to the Code (section 870 et seq.) and rule 82 of the general rules of practice, he must show the exigencies of the case making the testimony material and necessary for him. Where the testimony of a party will only be cumulative—i. e., upon a point on which the party applying has other testimony of precisely the same character—it will rarely occur that such testimony is desired for use upon the trial. While the purpose of the statute is not to be defeated by technicalities, its plain language is not to be ignored. The practice of taking the deposition of a party before trial, if guarded, will aid—otherwise, may defeat—the administration of justice. If the situation of a case is disclosed, the judge, without the aid of any hard and fast rules, can tell whether it is a case in which the statute requires the granting of the application. All we decide now is that the record before us presents such a case.

The order is reversed.

Order reversed, with $10 costs and disbursements, and motion denied, with costs. All concur.

---

### LOGERTO v. CENTRAL BLDG. CO.

(Supreme Court, Appellate Division, Second Department. January 24, 1908.)

1. MASTER AND SERVANT—SAFE PLACE TO WORK.

The danger to employés, engaged in removing a bank of earth by successively undermining it and then prying off the overhanging portion, being created by themselves during the progress of the work which they were engaged to do, the rule of safe place to work has no application.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 209.]

2. SAME—ASSUMPTION OF RISK.

A common laborer, employed with others, under the supervision of a foreman, to remove a bank of earth by successively undermining it and then prying off the overhanging portion, cannot recover for injury from the bank so undermined falling on him while still digging at its base; the risk being a necessary risk, which he is conclusively presumed to have assumed, whereas Employer's Liability Act, Laws 1902, p. 1750, c. 600, § 3, leaves to the jury the question of assumption of obvious risks only.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1005, 1068–1088.]

Hooker, J., dissenting.

Appeal from Trial Term, Westchester County.

Action by Frank Logerto against the Central Building Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

John C. Robinson, for appellant.

Thomas J. O'Neill (J. Brownson Ker, on the brief), for respondent.

MILLER, J. The action is for personal injuries resulting from negligence, and is brought under the employer's liability act. The plaintiff, a common laborer, was employed with others, under the supervision of a superintendent or foreman, excavating for a cellar. At the time of the accident he and the men working with him were digging at the base of a perpendicular bank of earth 14 feet high, for the purpose of undermining the bank so that it could be pried off with bars from the top, when the overhanging bank thus undermined fell upon him, inflicting a severe injury. He had been employed at this kind of work 35 days; the method being to undermine the bank and then to pry off the overhang, as indicated above. The plaintiff's evidence tended to establish the fact that the men worked at the base of the bank until directed by the foreman to cease excavating, while the defendant's evidence was to the effect that the men used their own judgment as to when to cease excavating and to pry down the overhang. The complaint, instead of containing a general allegation of the defendant's negligence, specified the grounds of negligence as follows, viz.:

"That the injuries sustained by this plaintiff, as aforesaid, were caused without any negligence on his part in any wise contributing thereto, but solely by the negligence of the defendant, in that, as plaintiff's master, it failed to furnish him with a reasonably safe place, appliances, ways, works, and machinery in and in connection with which to work, and in that defendant negligently failed to safeguard, inspect, and keep safe the place, appliances, ways, works, machinery, and apparatus in and in connection with which plaintiff was obliged to work, and in that defendant knowingly employed and retained incompetent foremen and co-workmen to guide, direct, and assist plaintiff in the performance of his work, and in that defendant failed to formulate, promulgate, and enforce proper rules and regulations for the safety of plaintiff and his co-employés, as a result of all of which certain earth, stone, and material was caused and permitted to fall upon this plaintiff's body and injure him as aforesaid."

A motion to dismiss was made at the close of the plaintiff's case, and renewed at the close of the entire case. The only question of negligence referred to by the court in the main charge was whether the defendant failed to furnish the plaintiff a safe place in which to work; but at the close of the charge the jury were instructed at the plaintiff's request as follows:

"That it was the duty of the defendant to conduct its work in a reasonably safe manner and by reasonable methods, and if the plaintiff was injured as a failure of the defendant so to do the jury is to find the defendant guilty of negligence in that regard."

No exception was taken to the charge of the court. The validity of the exception to the refusal of the motion to dismiss will be tested by the theory on which the case was tried and submitted to the jury.

The danger to the plaintiff and his fellow workmen was created by themselves during the progress of the work which they engaged to do; hence the rule of safe place has no application, as the learned counsel

for the respondent practically concedes. Citrone v. O'Rourke Engineering Const. Co., 188 N. Y. 339, 80 N. E. 1092; Russell v. Lehigh Valley R. R. Co., 188 N. Y. 344, 81 N. E. 122. The verdict is now sought to be sustained on the ground of the method and manner of doing the work, and the respondent urges that the jury could find the master negligent for having the work done in the manner hereinbefore stated, instead of adopting the safer, but more expensive, method of having the bank taken down from the top; but the plaintiff contracted to do the very thing which caused his injury, and, however hazardous the work, it seems clear that he assumed all the necessary hazards of the situation, and that liability cannot be cast upon the master solely because it would have been safer to do the work in some other way. The defendant employed the plaintiff to undermine this bank of earth. The dangers incident to doing that must have been equally obvious to both, and there was no implied obligation on the part of the master to protect the servant from the necessary dangers, which the latter assumed when he entered into the contract of employment. The rule seems to be applicable:

"That every one has the legal 'right to carry on a business which is dangerous, either in itself or in the manner of conducting it, if it is not unlawful, and interferes with no rights of others, and is not liable to one of his servants, who is capable of contracting for himself and knows the danger attending the business in the manner in which it is conducted, for an injury resulting therefrom.'" Labatt on Master and Servant, 84, and see cases cited in the note to sustain the quotation.

There are no facts in this case upon which to base any of the limitations to the doctrine, a disregard of which that learned author thought had led to unwarrantably harsh conclusions in some cases. For cases very similar to the case at bar, see Bradley v. Railway Co., 138 Mo. 293, 39 S. W. 763; Simmons v. Chicago & Tomah R. R. Co., 110 Ill. 340; Naylor v. Chicago & Northwestern Ry. Co., 53 Wis. 661, 11 N. W. 24; Rasmussen v. Chicago, Rock Island & Pacific R. Co., 65 Iowa, 236, 21 N. W. 583; Griffin v. Ohio & Mississippi R. Co., 124 Ind. 326, 24 N. E. 888. In the Bradley Case, cited supra, the defendant was held liable because of a departure without the servant's knowledge from the customary method of guarding against the danger. In the cases relied upon by the respondent, like Simone v. Kirk, 173 N. Y. 7, 65 N. E. 739, the negligence was the failure to furnish a safe place in which to work. Of course, the servant impliedly assumed only the necessary dangers, not those resulting from the master's negligence. What duty, then, did the master omit in respect to the method pursued? It is said that rules should have been promulgated, but such simple work as that involved here did not call upon the master to provide rules. The duty of inspection, which is suggested, is but an incident to the duty of furnishing a safe place, which, as we have seen, is not involved. It was the master's duty to furnish suitable implements and a sufficient number of competent servants. But no complaint is made of a breach of that duty. A foreman was furnished to supervise the work, and there is no suggestion that he was incompetent.

The respondent contends that the question of assumed risk could not be disposed of as one of law, because of section 3 of the employer's lia-

bility act (Laws 1902, p. 1750, c. 600). But it will be noticed that that section distinguishes between necessary risks and obvious risks. The servant is conclusively presumed to have assumed the former; the question of his assumption of the latter is for the jury. Vaughn v. Glens Falls Cement Co., 105 App. Div. 136, 93 N. Y. Supp. 979. He impliedly assumes the former when he enters into the contract; his assumption of the latter depends upon the application of the maxim volenti non fit injuria. True, the statute defines necessary risks as those "inherent in the nature of the business, which remain after the employer has exercised due care in providing for the safety of his employés." But that is but declaratory of the common law. Benzing v. Steinway & Son, 101 N. Y. 547, 5 N. E. 449. The master is under no duty to guard the servant against the ordinary or necessary risks, and in case of injury to the servant therefrom the latter cannot recover, not only because he assumed the risk, but because the master was not negligent. We do not say that the plaintiff cannot recover under the employer's liability act for the negligence of the defendant's superintendent (see Lynch v. Allyn, 160 Mass. 248, 35 N. E. 550); but that question is not now before us.

The judgment must be reversed.

Judgment and order reversed, and new trial granted; costs to abide event.

WOODWARD and JENKS, JJ., concur. HIRSCHBERG, P. J., not voting.

HOOKER, J. (dissenting). Obvious risk is such as is apparent, and it must be apparent to the person who is claimed to have assumed the risk. Danger from heat generated upon the union of sulphuric acid and water might be perfectly apparent to one familiar with the inside of a chemical laboratory, danger of the collapse from the overloading of a mechanical structure might be perfectly apparent to a mechanical engineer, and danger from the misuse of an electric current might be entirely apparent to an expert electrician; but these and similar dangers are hidden mysteries to many, and vaguely understood by others. On the other hand, it may well be that generally the danger from a revolving buzz saw is apparent to all who see it in operation. There is a sliding scale of character of dangers, and another of the ability of those who are in danger to understand them. It is fitting, therefore, that it should be left, as provided in the statute, to a jury's judgment whether the danger is obvious.

Here a bank of earth was being removed by the plan of undermining it and prying off the overhanging portion. The plaintiff was 24 years old, and had never been engaged in any other work than at "laboring work, working with a pick, working at excavation, general laboring work." He was unable to speak English, and testified upon the trial through an interpreter. Whether it was known to him that danger was to be apprehended by undermining this bank, supposing that the defendant had exercised due care to protect its employés who were doing the work, was, it seems to me, a question of fact for the jury's determination, and it should not be held as matter of law that this

risk was obvious to this plaintiff. Under the circumstances of the
plaintiff's walk in life, the business that he was and had been engaging
in, and his ignorance even of the English language, the jury were jus-
tified in finding as a fact that he did not understand the danger, and
hence that it was not apparent to him. I am, therefore, of the opinion
that the plaintiff did not, as matter of law, assume the risk. See Far-
rell v. City of Middletown, 172 N. Y. 666, 65 N. E. 1116; Reilly v.
Troy Brick Company, 184 N. Y. 399, 77 N. E. 385.

This view leads me to dissent, and I vote that the judgment be af-
firmed.