### SIMONE v. KIRK et al.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1901.)

MASTER AND SERVANT — INJURY TO SERVANT — NEGLIGENCE OF FOREMAN — FELLOW SERVANTS.

Plaintiff's intestate was killed by the fall of a large mass of caked lime, which was imbedded in a large pile of cinders, which deceased and others were employed as laborers in removing, such fall having been caused solely by the method adopted of removing such mass of lime by digging out the cinders from beneath it. The day gang had partially undermined the mass that fell, leaving the mass in a dangerous position, and deceased, a member of the night gang, was instructed by the foreman to loosen the cinders under the mass, when it fell almost at once.

There was no evidence that the foreman was not competent, or that he was not furnished with suitable appliances. *Held*, that there could be no recovery against defendants, since the negligence, if any, was that of the foreman, who was a fellow servant of deceased.

Appeal from trial term, Onondaga county.

Action by Rosa Simone, as administratrix of Angelo Simone, deceased, against William B. Kirk and others. From a judgment in favor of plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

The action was commenced on the 27th day of January, 1900, to recover damages for the death of the plaintiff's intestate, which occurred on the morning of June 9, 1899, alleged to have been caused through the negligence of the defendants. The defendants were co-partners, engaged as contractors in constructing a street surface railway extending from the city of Syracuse to the village of Baldwinsville, in the county of Onondaga, N. Y. They commenced work in the month of March, 1899, and on the 22d day of May following commenced to draw material from the "Solvay Dump," so called, with which to ballast the railroad. The dump was made of refuse material from the works of the Solvay Process Company, located immediately west of the city of Syracuse. It was a pile 150 to 250 feet long, extending east and west, was 15 to 25 feet high, and the face sloped at an angle of about 45°. The material of which this pile was composed was chiefly ashes and cinders, which were desirable for ballast. There was also scattered through the pile large masses of lime paste, which gradually hardened, and which was rejected as unsuitable for use. These hardened masses were undermined by taking the ashes or cinders from beneath them, when they fell to the ground, and were moved back or to one side, out of the way. A temporary track was constructed by the defendants along the foot of the slope the entire length of the pile, upon which cars were placed, and into which the ashes and cinders were shoveled by the defendants' employés. When the cars were filled they were taken away, unloaded, and returned, or others put in their place to be loaded, and in the meantime the men loosened the ashes and cinders in the bank, and placed them in piles near the track, ready to be shoveled into the cars. In substantially the same manner the work was continued night and day along the entire length of the dump, from the time it commenced in May until the time of the accident. The material at the foot of the slope was first removed, and the tracks were moved nearer to the pile, as occasion required. At the time of the accident, and for some time prior thereto, the work was in charge of a foreman, who employed and discharged men, and had full authority to direct as to all the details. Neither of the defendants had been upon the work for some days before the accident. The plaintiff's intestate was employed by defendants' foreman two days before the accident to work with the night gang in shoveling material from the dump into the cars standing alongside. There was a day gang of men similarly employed. The day gang had been employed on the day previous to the accident, and for several days prior thereto, at the easterly end of the dump, and had partially undermined a large hardened mass of lime refuse by removing the ashes and cinders underneath. The mass was seven or eight feet above the ground, was cracked, and was in such condition that the jury were justified in finding that it was liable to fall at any time, to the knowledge of the foreman. The plaintiff's intestate worked for the first time on the dump on the night before the accident, at its westerly end, and between 100 and 200 feet from the place of the accident. About 7 o'clock on the night of the accident the night gang, of which plaintiff's intestate was one, commenced work, and was directed to go to the east end of the dump, where the day gang had been at work, and continued to work there, in the immediate vicinity of the overhanging mass, until the time of the accident. A few minutes before the accident plaintiff's intestate was directed by the foreman to work under the overhanging lime mass, by picking and loosening the ashes underneath, which he proceeded to do, and within three minutes the mass fell, and so injured him that he died

soon after. The place where the accident happened was not well lighted, and there is evidence which tends to show that the deceased did not know of or appreciate the dangerous situation, that the mass was cracked, or that it was liable to fall. It does not appear that the defendants' foreman was not in every way competent, or that he was not furnished with all the necessary and proper appliances with which to prosecute the work. It does appear that when he was placed in charge of the work the place was entirely safe, and became unsafe only because of the manner in which the detail of the work was carried on. In other words, the accident occurred because plaintiff's intestate went, as directed, underneath the projecting mass, which was dangerous, and made so by the day gang, to the knowledge of the defendants' foreman, to further undermine it by removing the ashes and cinders beneath, instead of loosening it at the top, and thus causing it to fall to the ground, so that it could then be moved away. The foregoing is a statement of the evidence most favorable to the plaintiff, and from it must be determined whether or not the defendants were guilty of actionable negligence, the only question which need be considered upon this appeal.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Jerome L. Cheney, for appellants.
W. J. McClusky, for respondent.

McLENNAN, J. The only respect in which it is claimed the defendants were negligent is that they failed to furnish a safe place for the plaintiff's intestate to perform the duties assigned to him by their foreman, and that was the only question relating to the defendants' negligence which was submitted to the jury. The learned trial court charged that there was no evidence that the foreman was incompetent, and that the defendants were not liable for his negligence, even if he was negligent in directing the deceased to work under the overhanging mass of material. As we have seen, the place, tools, and appliances furnished by the defendants for the removal of the material in the dump were entirely safe and suitable when the work began and when it was placed in charge of the foreman. The place where the plaintiff's intestate was killed became unsafe solely because of the manner in which the detail of the work was performed, to wit, because the hardened mass of material which fell had been undermined by other workmen, to the end that it might fall to the ground, and then be moved out of the way, instead of loosening it at the top, and thus causing it to fall. The rule is well settled that, where a master in the first instance furnishes a reasonably safe place for his employés to work in, he is not liable to one of them for injuries sustained on account of the place becoming unsafe because of the manner in which the detail of the work is performed under the direction of a competent foreman. Capasso v. Woolfolk, 163 N. Y. 472, 57 N. E. 760; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021; Loughlin v. State, 105 N. Y. 159, 11 N. E. 371; Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556; 2 Hutchinson v. Charles F. Parker & Co., 39 App. Div. 133, 57 N. Y. Supp. 168, 58 N. Y. Supp. 190.

It is urged that the case at bar does not fall within the rule above stated, because of the fact that the plaintiff's intestate, or those with whom he was immediately associated in work (the night gang),

did not in any manner cause the dangerous situation which caused the accident, and therefore that the deceased did not know, or have opportunity to know, of the exact conditions existing immediately prior to the accident. The deceased, it will be remembered, had only been employed upon the work in question one night prior to the accident,—the night previous,—and then at the extreme westerly end of the dump, about 200 feet from where he was injured. Upon the night of the accident, about 7 o'clock p. m. (the accident occurring about 3 o'clock a. m.), the deceased, with the rest of the night gang, was put at work at the westerly end of the dump, in the immediate vicinity of where the dangerous place was, and which had been made so by the day gang. It is claimed that as to the deceased the place as it existed at 7 o'clock was the one furnished by the master, and that it being unsafe at that time to the knowledge of the foreman, and the accident having been caused thereby, without fault on the part of the deceased, the master is liable. We think the claim is not tenable. The plaintiff's intestate knew that the defendants were engaged in removing material from the dump along its entire length; that the day gang of defendants' employés was engaged in doing the same work at the easterly end that he and the other members of the night gang were doing at the westerly end; that all were engaged upon the same job, upon the same work, and were prosecuting a common enterprise. The fact that the deceased had only been employed one night previous to the accident cannot be important, as bearing upon the defendants' negligence. If he had been at work upon the dump each night from the 22d of May, when operations commenced, and had been kept constantly at the westerly end until the night of the accident, his situation would have been in no manner changed. In that case he would have known no more about the real condition of the work at the easterly end, the manner in which it had been done, the way in which the place had been left by the day gang upon the night in question, than if he had not been employed by the defendants at all during such period. A master is not chargeable with negligence because his foreman, the person in charge of the particular work, fails to keep each employé informed as to the manner in which a co-employé or another gang of employés has performed his or its duties in respect to the same work, even although such failure results in injury to an employé. Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905. In speaking of that case, the court, in Perry v. Rogers, supra, said:

"In that case the place of employment was a quarry underground, from which rock was being taken to be used in the manufacture of cement. This rock was excavated by means of blasting, in the performance of which work holes were drilled in the rock, and subsequently explosives inserted. After a blast it was found by the foreman in charge that one of the charges had not exploded. A further examination showed that the fuse was unconsumed, but he omitted to remove it, and put the plaintiff's intestate at work drilling about 30 feet distant. Shortly afterwards the fuse caught fire, and the charge exploded, causing C.'s death. There the question was presented and decided whether the master was chargeable with neglect of duty, in that the quarry was not a safe place to work in at the moment of the explosion. It was held that the defendant discharged his duty when he furnished a quarry which was at that time as safe a place to work in as quarries gen-

erally are, and certainly free from the dangerous substance which subsequently caused the accident."

An examination of the facts will show that the plaintiff's intestate in that case did not know and was not informed how or in what manner the employés charged with the duty of discharging the blasts had performed such duty, and, so far as appears, he had no reasonable means of obtaining such information. The defendant's foreman had such knowledge, knew that the blast had not been discharged, knew that the place was then dangerous, but, notwithstanding, directed the plaintiff's intestate to proceed to drill another hole in the immediate vicinity. An explosion occurred, and thus his death was caused. It having been held that no recovery could be had in that case, it would seem idle to argue that a recovery can be sustained in the case at bar, based upon the fact that the defendants' foreman failed to inform plaintiff's intestate of the unsafe or dangerous condition of the place in which he was directed to work immediately prior to the accident, or because plaintiff's intestate did not possess such information. The plaintiff's intestate, the defendants' foreman, the members of the night and day gang, were all co-employés, all engaged in a common enterprise, were all performing substantially the same duties, and for the negligence of one, resulting in injury to another, the defendants are not liable.

The fact that the night gang took the place of the day gang, and took up the work as it was left by the latter, can in no way change the rule or increase the master's liability. If an employé in the gang to which the deceased belonged had been directed by the foreman to undermine the hardened mass in question, and when he had nearly completed the work, and the mass was about to fall, to the knowledge of the foreman, the plaintiff's intestate had been directed to take his place and complete the work, and while so doing the accident had occurred, it could hardly be claimed that the defendants would be liable. Clearly, that would be a detail of the work, and the fact that the foreman was negligent in directing defendants' employés in regard to such detail could not be made the basis of a recovery. The same principle applies notwithstanding the mass was substantially undermined by the day gang, and several hours before the plaintiff's intestate was directed to complete the work. We think the decision in the case of Perry v. Rogers, supra, and the cases referred to in the opinion of the court in that case, are decisive of the questions involved upon this appeal. The conclusion is reached that upon the evidence, interpreted most favorably to the plaintiff, he failed to establish actionable negligence on the part of the defendants, and therefore that the judgment and order appealed from should be reversed, and a new trial granted.

Judgment and order reversed upon questions of law only, the court having examined the facts and found no error therein, and new trial ordered, with costs to the appellant to abide event. All concurred.