## GAGNON v. KLAUDER-WELDON DYEING MACH. CO.

(Circuit Court, N. D. New York. December 6, 1909.)

**1. MASTER AND SERVANT (§§ 155, 190\*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DANGEROUS METHOD OF DOING WORK.**

When there are safe ways or methods of doing work which an employé is directed by the master to do, and also dangerous ways or methods, and the dangers are not obvious, but latent, and the servant is ignorant of them as the master knows, it is the duty of the master to warn the servant of such dangers; and, if the master has delegated the general control and management of the business to a superintendent, it is his duty, as representing the master to so warn a servant who is under his orders, and his negligence in failing to do so is the negligence of the master, and renders him liable to an employé for an injury of which such negligence is the proximate cause.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 310, 427–435, 449–474; Dec. Dig. §§ 155, 190.\*]

**2. MASTER AND SERVANT (§ 226\*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMED RISKS.**

An employé never assumes the risk of the negligence of the master, and, if he is injured through the concurrent negligence of the master and co-employé, the master is liable therefor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–667; Dec. Dig. § 226.\*]

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

**3. MASTER AND SERVANT (§ 190\*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—DANGEROUS METHOD OF DOING WORK.**

Defendant corporation operated a plant for the manufacture of machinery, one of the buildings being a blacksmith shop in which plaintiff was employed as head blacksmith, and where he was injured by the explosion of a piston head which was being heated by him and another employé for the purpose of being shrunk on to a new piston rod. The head was hollow, and it was dangerous to heat it without drilling a vent for the escape of moisture from the inside, but plaintiff did not know the danger. The entire plant was under the management of a superintendent who employed and discharged the men, and directed their work. There was evidence that he sent the other employé with the piston to the blacksmith shop with directions that it be heated, although there were other safe ways of attaching the rod without heating, and, although he knew the danger unless a vent was made and that plaintiff did not, he gave no warning nor directions as to how the work should be done. *Held*, that his negligence in that regard was that of the master, and the evidence was sufficient to sustain a verdict finding defendant liable for plaintiff's injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.\*

Duty of master to promulgate rules as to methods of work, see note to St. Louis, K. C. & C. R. Co. v. Conway, 86 C. C. A. 8.]

**4. DAMAGES (§ 132\*)—PERSONAL INJURY—EXCESSIVE DAMAGES.**

An award of $4,000 damages for a personal injury to plaintiff, by which he lost two fingers and a part of his right hand, but had not suffered any loss of wages at his trade of blacksmith, *held* excessive, and required to be reduced to $3,000.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.\*]

Action by Simon Gagnon against the Klauder-Weldon Dyeing Machine Company. Motion for new trial. Motion overruled.

See, also, 166 Fed. 286, 92 C. C. A. 204.

Henry V. Borst, for plaintiff.
Duell, Warfield & Duell, for defendant.

RAY, District Judge. This action is to recover damages which the plaintiff claims to have sustained by reason of the negligence of the defendant. The jury rendered a verdict in his favor for the sum of $4,000, which is alleged to be excessive in any event.

The evidence in the case shows or tends to show the following facts:

(1) The plaintiff is a machinist's blacksmith and a resident of the state of New York. The defendant is a corporation organized under the laws of the state of Pennsylvania, but at the time of the transactions in question was doing business in the state of New York, and engaged in the manufacture of machinery at Amsterdam, N. Y. It had at least one engine for running its manufacturing machinery. Shortly before the accident or transaction complained of, it purchased another engine, a secondhand one; this was being installed or set up for use in the defendant's machine shop, and in some of its parts needed repairs.

(2) The blacksmith shop was separate from the machine shop, but a part of the same general plant. The plaintiff, Simon Gagnon, was the head blacksmith and in general charge of the work in that shop, having an assistant. All the repairing and all the forging were done there. The company was also doing general jobbing.

(3) John C. Evenden was the superintendent or general foreman of the defendant company and of its shops above referred to. Gagnon says he was superintendent, and hired and discharged the men, and directed the work, what was to be done. It was customary for Evenden to instruct the men as to the manner in which he wanted the work done and to work with them at times, and at the times in question he had general charge of the men and work.

(4) Shortly before that some trouble had arisen between Jackson, one of the men, and Gagnon, because Gagnon did not do some work he, Jackson, had taken into the blacksmith shop for Gagnon to do as promptly as he wished, and he reported to Evenden. Evenden went in to the blacksmith and told Gagnon, as Gagnon says: "Sime, hereafter whenever I send any men to the blacksmith shop to have any work done, you have got to do it, or else drag yourself out." This was denied by Evenden. Jackson testified Evenden said to Gagnon: "'Hereafter when I send men out here to get their work done, you do it right away or get out or strike out'—something similar to that."

(5) James Spore, an employé of the defendant, was an experienced machinist whose work and duties were in the machine shop, not in the blacksmith shop.

(6) Gagnon had had some experience with absolutely solid piston heads, but none with hollow piston heads like this, and had no knowledge or information of their liability to explode when heated without

being vented, if old, or had laid around in damp places, or under any conditions. There was some evidence that defendant knew this.

(7) The making, repairing, or handling of engines or piston heads was no part of the manufacturing business of the defendant company or of its general business except as it became a part of its business to repair this old engine referred to for the purpose of installing it as a part of and an addition to its manufacturing plant, and of which the piston head in question here was a part.

(8) There are at least four ways of repairing a piston head as this was being repaired in the respect material here; that is, by taking out the old piston rod and replacing it with a new one, viz., pressing in the new rod by hydraulic pressure; driving it in by heavy blows; expanding the piston head by heat, then putting in the cold rod and letting the head cool, which process is called shrinking it on; drawing the head on with a nut, partly driving and also drawing with the nut; driving on or drawing the rod in tight by means of a slot and tapering key. Putting in the new rod by hydraulic pressure is best, by the shrinking process next best, and by driving next best.

(9) An old piston head such as this was will gather more or less moisture in the cavity in its interior, and, if heated without being first vented, will explode. There is evidence that defendant knew this.

(10) On the day in question, February 22, 1906, the defendant company was engaged in putting a new piston rod into this old piston head of this old engine then being installed in defendant's plant, the work being done under the general direction of Evenden.

It was first taken into the machine shop, where considerable work was done by Spore under the general direction of Evenden. Just what directions were given him by Evenden is a disputed question, and, as Spore was killed in the afternoon by the explosion which will be referred to, the plaintiff relies to some extent on inferences to be drawn from certain facts. In the afternoon Spore rolled the head into the blacksmith shop and gave Gagnon some directions, but what was said was ruled out under a decision of the Circuit Court of Appeals in this case on appeal from a judgment for the plaintiff entered on the verdict of a jury on a former trial had before Judge Holt. 166 Fed. 286, 92 C. C. A. 204. The piston head was placed on the fire by Gagnon and heated on one side, Spore standing by with the new rod, and, as Gagnon was in the act of turning the head on the fire, it exploded with great force, and Spore was killed, and Gagnon injured in one leg and in one hand, losing the first and second fingers of his right hand by the flying fragments. The head was heated without being vented. This venting could have been done by drilling a hole to the interior or by taking out one of the plugs.

The plaintiff gave evidence by one Kehoe that he heard Evenden say, when giving directions to Spore in regard to the piston head, "be careful, Jim, when you take that out, don't let Sime burn it." Evenden denied that he said this, and claims that he gave Spore positive directions to put in the new rod by the cold or driving process. He, in turn, was contradicted or sought to be discredited on this point by witnesses who said that, after the explosion, they heard him say, "We

forgot to vent it." The defendant on this state of facts says there is no evidence to sustain the verdict; that the plaintiff was guilty of contributory negligence in not tapping the piston head; that the proximate cause of the injury was the negligence of a fellow servant, Spore, in not having the head tapped; that there is no evidence connecting Evenden with the accident; that there is no evidence that Evenden gave Gagnon any directions as to putting in the new rod; that the plaintiff assumed the risk of the negligence of Evenden in directing the men and the work and the mode and manner of doing it if he gave any as to heating the head; that the evidence is conclusive that Evenden told Spore to put in the rod cold, and the proximate cause of the accident and injury was the disobedience of these orders by Spore; that Evenden was a competent man and a competent superintendent or foreman, and, as there was more than one way or mode of doing the work, three safe ones and only one dangerous one, the defendant company had the right to assume that Evenden would select the safe method or one of them, and that, even if he was negligent in selecting the dangerous method and directing it to be done by that method and neglected to direct the head to be vented, the defendant is not liable, for such negligence; and that under the circumstances, assuming that the method adopted by Evenden and directed by him to be followed was unsafe, or accompanied by latent dangers of which the plaintiff, Gagnon, was ignorant, and of which defendant knew he was ignorant, the defendant was under no obligation to instruct him as to or inform him of such danger as it had no reason to suppose it would be incurred, and was not negligent in not instructing him or informing him of such danger—that is, the danger of shrinking a piston head on a new rod by the heating process without venting. While the repair of this engine and the repair of this piston head in the respects mentioned was not a part of the general manufacturing business in which the defendant was engaged, it was a part of its business as it was repairing and enlarging its plant and manufacturing facilities by putting in additional machinery and manufacturing facilities. It was the business of the defendant. Evenden was superintending and directing it and had general control over it and the men engaged in doing the work. He represented the defendant. The plaintiff claims that, so far as Gagnon was concerned on the occasion in question, Evenden was not a co-employé or fellow servant of Gagnon. Evenden was not in the shop, or giving orders there, at the time or assisting in doing the work. In sending the piston head and rod into the blacksmith's shop to have the head shrunk onto the rod by the heating process, if he did, he spoke for and represented the defendant company, and his act and his order, so far as Gagnon was concerned, were the act and order of the defendant company. If this be true, and there was danger, a latent danger, in putting that rod in that head by that process, and defendant company knew it and plaintiff Gagnon did not and defendant knew he did not, then, plaintiff claims, it was the duty of the defendant company to inform Gagnon of, or instruct him as to, the danger; and, if there was a safe way to do the work and avoid the danger, it was the duty of the defendant company to instruct or advise him of the safe way or mode if it required him to do the work at all.

On this subject the court charged the jury, and on this theory the case was submitted to the jury, for on no other theory could the plaintiff recover. The question was brought up sharply and distinctly by requests to charge and the responses of the court thereto. The defendant requested the court to charge:

"If the jury find that Gagnon, the plaintiff, knew or had cause to know that it was dangerous to heat this piston head without a vent in it, they must find for the defendant."

The court in response said:

"That, of course, is true, gentlemen. As I told you in very emphatic language the negligence in this case if any is in the failure of the defendant company to inform Gagnon of the danger of heating that head without a vent in it. But, of course, if he knew the danger he didn't need, as I have told you, any information on the subject. He knew better than to do it, and it was his own negligence, his own fault."

The court was requested to charge, and charged, as follows:

"If the jury disbelieve the testimony of Kehoe, there is no evidence in the case of Evenden directing a heating process, and they must find for the defendant. That is true. If there is no evidence of his directing the heating process, they must find for the defendant. But still, gentlemen, if Mr. Evenden, representing this defendant company, sent that in there to be changed at the discretion and will of this plaintiff, as he might see fit to do it, in the ordinary way, without instructions as to the danger of doing it without a vent, then this defendant might be liable. If he sent it in there without any instructions at all, but simply told him to do it, and didn't tell him of the danger, there being more than one way of doing it, one being dangerous, and left it to him to do it in either way, he not knowing—if the plaintiff didn't know that either was dangerous, then you might say it was negligence not to inform him of the danger of doing it in one of those ways."

The court was requested to charge, and charged, as follows:

"If the jury believe that Evenden, the foreman, knew of the danger of heating this head without a vent and directed the heating to be done in this way —that is, by heating, without a vent—when he knew a perfectly safe way, that was negligence in the manner of directing the work to be done as to which the plaintiff assumed the risk, and for which he cannot recover. For that particular negligence, gentlemen, he could not recover. But that would be the negligence of a co-servant, a co-employé, and he assumed the risk; that is, the plaintiff Gagnon, assumed the risk when he entered the employment of the negligence of his co-servants, co-laborers, and co-employés. But, gentlemen, he did not assume the risk of the negligence of the company itself. It was the duty of the company if there were latent dangers in the work they set him to do through this representative Evenden, the foreman, to inform him of those latent dangers, and, if they left that duty to Evenden, to inform Gagnon of those dangers, and Evenden, knowing the dangers, failed to perform the duty intrusted to him by the defendant company, and failed to give him notice, while that was negligence, in not giving notice, on his, Evenden's, part, there was a concurrent negligence in not conveying information to Gagnon of the danger of doing it—there was a concurrent, co-acting negligence of the defendant, and so the defendant could not escape liability because they failed to give information of the danger to the plaintiff in this case.

"(Exception.)

"But for this particular negligence that they point out, standing alone, of course, he could not recover."

The jury was instructed that plaintiff could not recover if Evenden directed the rod to be driven in cold and Spore disobeyed that instruction and used the heating process; also, that Evenden's instructions

174 F.—31

to Gagnon to do the work of the men when sent in to the blacksmith shop did not make the defendant responsible for a negligent direction by Spore as to a negligent method of doing the work.

The court was requested to charge, and charged, as follows:

"If they find that there would be no latent danger in properly heating the head with a vent in it, that they are entitled to the presumption that the foreman Evenden and the fellow servant, Spore, would use the proper method of directing the work to be done.

"The Court: Of course, that is all true. At the same time, gentlemen, it was the duty of the defendant, if there was a latent danger and it knew it, to inform the man who was to do the work of that latent danger. If the defendant failed to perform that duty, and that was the proximate cause—of course, that comes in here everywhere—if it was the proximate cause of the accident and injury, then, of course, there could be a recovery.

"(Exception.)

"There can be no recovery in this action for the negligence of a co-servant or co-laborers; not that alone. There must be behind that a concurrent negligence of the defendant itself in failing to inform plaintiff of the latent danger, providing, of course, you find that he didn't know of the latent danger.

"Mr. France: I request that in this form: That there could be no latent danger if this head were heated with a vent in it; that the defendant was entitled to presume that Evenden and Spore would direct its being heated if at all with a vent in it; and that the jury must find for the defendant.

"The Court: I decline to direct a verdict for the defendant.

"(Exception.)

"It is for the jury to say whether this was negligence or not in not informing him of the latent danger if there was one, providing they find the plaintiff was ignorant of that latent danger."

The court was also requested to charge and charged:

"Evenden, the foreman, so far as this case is concerned, represented the defendant only as to its duties to furnish a safe place, safe machinery, and implements and competent fellow servants. As to his directions as to methods of work, the plaintiff assumed the risk, and for negligence in that regard he cannot recover. I have told you several times, and I tell you now, that Evenden, the foreman, so far as this case is concerned, represented the defendant only as to its duties to furnish a safe place, safe machinery, and safe implements and competent fellow servants: but if he was in charge there, gentlemen, of those shops, the blacksmith shop and machine shop, if he was the man in charge there and in control, then it was his duty if he set this plaintiff to do a dangerous piece of work, which was the work of the defendant, which the defendant authorized to be done, and there were latent dangers in that work, then it was a part of the duty of Evenden, representing the company, to inform Gagnon of those dangers."

The court was requested to charge, and charged, as follows:

"If the jury find that there was a safe way and an unsafe way in which this work could be done, and that the safe way was known to Evenden, the foreman, the defendant was entitled to the presumption that Evenden would direct the safe way and was not called upon to warn the plaintiff of any latent dangers.

"That I decline to charge.

"(Exception.)

"It was its duty if there were latent dangers of which the plaintiff was unaware, and these latent dangers were known to the defendant company, and it set this plaintiff on a dangerous job, and there was a safe way and an unsafe way, then it was its duty to inform the plaintiff here of the safe way of doing the work. And if it intrusted that duty to Evenden or anybody else, and Evenden or that other person failed to perform that duty, while they were negligent in not performing the duty intrusted to them, still that negligence would not exonerate the defendant company, for the reason that it

would remain a fact that the defendant company hadn't performed its duty of warning the plaintiff.   *   *   *

"(Exception.)

"The Court: I don't know exactly what you mean. If this defendant, desiring to have that change made, if this defendant intrusted it to Spore and told him to make the change by the heating process, and he knew all about it, and he went and got somebody else to do it, and Spore was negligent about it, and didn't obey instructions, why then that would be the negligence and disobedience of orders of course by Spore, for which this defendant would not be responsible at all.

"If that job was intrusted to Spore as Evenden says it was, and you so find, and was told to do it, I don't care how he was told to do it, whether by one process or the other, if it was intrusted to him to do, and he should get somebody else to do it without authority of the defendant company, in violation of its orders, why, of course, he was not authorized to employ Gagnon, and the defendant company would not be liable for what occurred."

So the jury was emphatically told that if Spore was directed to make the change and repairs and to use the cold process, and that was all the defendant company authorized to be done, and Spore then took it to the shop and had the heating process used, the plaintiff could not recover, and the court further added:

"As I told you before, you have to find the company itself sent that thing into the blacksmith shop; that the defendant itself put it into the hands of Gagnon; that the defendant itself—that is, of course, acting through its agents and servants, and it was by its authority given out through Evenden—and that, having put it into the plaintiff's hands, they didn't tell him that he must do it in a particular way—that is, that they didn't inform him of the danger of heating it without a vent; let him do any way he pleased—if he was ignorant, of course, and they didn't properly warn him, and he got hurt, through the existence of that latent danger in the thing they put into his hands and sent out there for him to do, then you see that it was their negligence in not warning him, and they are responsible for that negligence, but not under any circumstances for the negligence of any of these co-servants or co-employés."

The court later charged, and no exception was taken:

"As for instance, if you find that the defendant itself was negligent, if you find that it was negligent in not informing the plaintiff of the latent danger, if you find that there was latent danger in repairing that or heating it without a vent, if you find that Gagnon was ignorant of the latent danger, and if you find that the defendant company sent that iron into the shop there to be repaired and fixed by Gagnon, and then didn't inform him of the danger, or give him any special instructions, but left it to him to do as he saw fit about it, and he did as he saw fit, unaware of the danger, and because of this negligence of the defendant in not informing him of the danger he was injured, then that would be the negligence of the defendant, and the proximate cause of his injury for which they would be liable. Of course, the defendant company is only liable here for negligence which was the proximate cause of the injury. If there was a remote cause, some other negligent cause intervened, then the defendant is not liable for that injury. It must be proximate. It must have been the negligence of the defendant. The defendant under those circumstances is not liable for the negligence of either one of these servants or co-employés. Remember that. You cannot base any finding here against the defendant company on the ground of the negligence of any of these co-employés. You must find negligence of the defendant in the particulars I have pointed out. You must find that was the proximate cause of the injury. If you find all that, then you would come to the question of damages and only then."

Whether we consider Evenden as the defendant's general superintendent or general foreman, under the evidence in this case, he rep-

resented the defendant in conducting all this work carried on in these shops, and in managing and directing the men, with power to employ and discharge them. He had power to direct what was to be done in the blacksmith shop, and to send work in there to be done. If he told Spore, in effect, to take the piston head into the blacksmith shop and be careful, and not let Sime, the plaintiff, burn it, the jury had the right to infer that his instructions to Spore were to take it out into the blacksmith shop for the purpose of having the head shrunk on to the rod by the heating process. Spore took it out there, and that is what Gagnon was doing in the presence and with the aid of Spore. It was plaintiff's duty, in view of what Evenden had said to him before, to go on and do the work—not something he knew to be dangerous however —but to do the work if ignorant of the danger, and not informed of it. If he vented it and then heated it, there was no danger. If he heated it without vent, there was danger. Gagnon was ignorant of the danger of heating it in the condition it was when taken to him, and he was not informed of the danger. In sending it there Evenden represented the defendant company. It was the defendant's act. Evenden did not accompany the head. He was not assisting in doing the work. He was not at the time or in the heating of the head a co-employé in that matter with Gagnon. . When an employé is put at dangerous work by the master, and the dangers are not obvious, but latent, and there are dangerous ways or methods of doing the work and safe ways or methods, and the employé is ignorant of such dangers and the master knew it, it is the duty of the master to inform the servant of the danger so he may avoid it. And, if the master has delegated the general management and control of its business and work and employés to some one person, whether it be a general superintendent or a general foreman, it is the duty of that person representing the master to inform the employé of latent dangers in doing work he has authority to direct him to do and sets him at. And, if the foreman fails to give the necessary information or instructions, it is the negligence of the master, and the employé, if injured, as the proximate result of the danger of which he was not informed, is entitled to recover. This is for the reason the master has failed in its duty, not that the foreman failed in his. He does not recover for the negligence of the foreman, but for the negligence of the master. Mercantile Trust Company v. Pittsburgh & W. Ry. Co. (Lake, Intervener), 115 Fed. 475, 53 C. C. A. 207; Simone v. Kirk, 173 N. Y. 7, 13, 16, 65 N. E. 739, reversing 57 App. Div. 461, 67 N. Y. Supp. 1019; O'Brien v. Buffalo Furnace Co., 183 N. Y. 317, 321, 322, 76 N. E. 161, reversing 94 App. Div. 609, 87 N. Y. Supp. 1142, 26 Cyc. 1167, 1168, and cases there cited; Peters v. George, 154 Fed. 634, 83 C. C. A. 408; Pennsylvania R. R. Co. v. Hartell, 157 Fed. 667, 85 C. C. A. 335; Railroad Co. v. Fort, 17 Wall. 553, 559, 21. L. Ed. 739.

The principle is thus stated in Mercantile Trust Co. v. Pittsburgh, etc., supra, 115 Fed., at page 481, 53 C. C. A., at page 212:

"The duty of informing a servant of special or extraordinary risks connected with his service is a primary duty of the master, when they are known to him and the delegation of such duty to any other servant, whether higher

or lower in the scale of employment than the one exposed to the peril, cannot relieve him of the responsibility imposed on him by the law."

In Pennsylvania R. R. Co. v. Hartell, supra, Coxe, C. J., in giving the opinion, held:

"It is the duty of a master to provide, not only suitable machinery, means, and appliances, but competent fellow servants and a sufficient number to do the work in hand; and, where there are peculiar dangers incident to the business, the servant, if inexperienced, must be warned in advance of their existence."

In Peters v. George, supra, Gray, C. J., in giving the opinion, held:

"Under the modern rule of the federal courts, the theory of vice principal as determining the liability of a master to a servant for the negligence of another employé has been largely discarded, and the distinction between negligence which is to be imputed to the master and that which is to be considered as merely and solely the negligence of a fellow servant, turns rather on the character of the act than on the relation of the employés to each other. * * * The duty to warn and instruct an employé who is set to perform a dangerous work with which he is unacquainted is a primary and absolute duty of the master to the servant, and he cannot relieve himself of liability for its nonperformance by delegating or intrusting it to a subordinate or to a fellow servant of such workman. Nothing short of actual notice of the danger to the workman who is to encounter it, with such cautionary explanation as may enable him to avoid it, will satisfy the requirement of the law, and the default of an intermediary, whether he be the highest officer in control or merely a fellow workman of the one exposed to the danger, is the default of the master."

In 26 Cyc. 1167, citing many cases, the rule is stated thus:

"The duty of warning and instructing a servant is a primary duty of the master, and the delegation of such duty to another servant, whether higher or lower in the scale of employment than the one exposed to danger, cannot relieve him of the responsibility imposed on him by the law."

So, "where a servant is directed to do work outside the scope of his regular employment, the master is under the same obligation to warn and instruct him as though he were engaged in his regular employment." 26 Cyc. 1172, and many cases cited; Dyer v. Brown, 64 App. Div. 89, 71 N. Y. Supp. 623. It is undoubtedly true that a master who employs competent superintendents and foremen may leave the execution of the details of the work to them, and is not required to oversee the details, and that, where there are different methods of doing certain work, it may leave it to them to select the method; but if some methods or processes are dangerous, and others not dangerous, and this is known to the master and the selection of method is left to the foreman in charge, and he is at liberty, as was the case here, to adopt either method, and he adopts the dangerous one and directs the work to be done in that way, he represents the master in so doing, and the selection of mode or method is the act of the master as much as if he were personally present and made the selection, and, as it would be negligence for the master to set the ignorant workman to the execution of the work in that manner without warning or instructions, so it would be his negligence should the vice principal or foreman set the ignorant employé to do the work according to the dangerous method without warning or instruction as to the danger. See generally, 26

Cyc. 1151–1155. "As a general rule, the master will not be held responsible for injury to a servant in the course of his employment where the usual and customary methods of work are employed, provided such such methods do not disregard the safety of the servant." Allen v. Burlington, etc., R. Co., 64 Iowa, 94, 19 N. W. 870; 26 Cyc. 1155.

This principle is well illustrated in O'Brien v. Buffalo Furnace Company, supra. There the defendant by its employés was engaged in breaking up slag by blasting with dynamite. The work of blasting had been confided to one Minor, a competent man. Bachman was the general foreman of defendant. A coil of pipe was incased in the slag. Plaintiff's intestate was, called from his usual work to assist Minor by cutting up a stick of dynamite and dropping the pieces in the pipe. As plaintiff's intestate dropped in the pieces of dynamite, Minor pushed them down, using a steel rod for the purpose. It was a dangerous method to push the explosive down with the steel rod. A wooden one should have been used. The dynamite exploded, and O'Brien, plaintiff's intestate, was killed, and Minor severely injured. Bachman, the general foreman of defendant company, was present up to a few minutes before the explosion, but did not interfere. He returned shortly before the explosion, but did not interfere. He saw the dangerous method in which the work was being done. He had power to stop it. The court said:

"The explosion was caused by the negligence of Minor in using a rod of steel instead of one of wood. This was the negligence of a fellow servant in the performance of a detail of the work."

It then refers to the presence of Bachman, who was the alter ego of defendant, and continues:

"Had Bachman, on discovering that Minor was doing the work in a dangerous manner, promptly intervened, the accident would not have occurred, or had he even told the deceased, to whom he had previously said that there was no danger, that the work as then conducted was dangerous, the deceased might have fled from the danger, and, at least, the injury to him been avoided. The learned Appellate Division, while assuming that the jury might have found negligence on the part of Bachman, was of opinion that it was negligence in the performance of a duty by an operative in respect to a detail of the work, for which the master was not responsible, and cited Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521, and Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905. We entertain a different view. As already said, Bachman was the manager of the corporation, and therefore its alter ego. He was, for the purposes of this case, the master. The detail of the work, which was the servant's duty, was done in this case, not by him, but by Minor. In this respect the case radically differs from those cited by the Appellate Division. It is the duty of the master to use reasonable care to so conduct his business as not to subject servants to unnecessary danger in the prosecution of their work. * * * Ordinarily, so far as liability to his servants is concerned, that duty is performed when he selects competent fellow servants. But, when he sees that one servant is so negligently doing his work as to occasion danger to a fellow servant, it is his duty to interpose, and direct that the work be properly done. Doing v. N. Y. Ont. & W. Ry. Co., 151 N. Y. 579, 45 N. E. 1028; Dowd v. Same, 170 N. Y. 459, 63 N. E. 541."

The court then holds defendant liable because of the negligence of Bachman, which it holds was defendant's negligence. Now, suppose that Bachman, instead of negligently allowing the work to proceed by that improper and dangerous method, or in that improper and danger-

ous manner, had actually directed it to be done in that way without warning of the danger, would the defendant company have been any the less liable?   Clearly not.

The point is that Evenden, the general foreman, having all the power and authority described, represented the defendant, was its alter ego, and he, as the jury found, sent the unvented head to Gagnon, the plaintiff, with the new rod to have it shrunk on by the heating process without any warning of the danger, or instructions as to what was to be done to avoid danger.   While this was negligence on his part, of course, it was the act of the defendant, and negligence on its part. The duty of giving warning of dangers in an employment or instructions as to such dangers and the proper methods of doing the work in order to avoid them and the duty of inspection are duties resting on the master and cannot be delegated so as to exonerate the master in case they are not performed.   This is the law of the Supreme Court of the United States as well as of the state of New York.   Simone v. Kirk, 173 N. Y. 7, 13, 14, 16, 65 N. E. 739, reversing 57 App. Div. 461, 67 N. Y. Supp. 1019; Koehler v. New York Steam Company, 183 N. Y. 1, 75 N. E. 538, reversing 93 App. Div. 612, 87 N. Y. Supp. 1139.   In Koehler v. New York Steam Company, supra, the court, at page 4 of 183 N. Y., page 539 of 75 N. E., said:

"To state it in a different form, the court held that, although the evidence warranted the jury in finding that a defective condition existed which could have been discovered by a careful inspection, yet the defendant was not liable, since it had provided for an inspection by competent employés.   In this conclusion we think the learned court below clearly erred.   It has become one of the axioms of negligence law that the duty of inspection is the master's duty, and one that cannot be delegated so as to relieve the master from responsibility.   If a servant perform this duty, he is the alter ego of the master and for any negligence in its discharge the latter is liable.   *   *   *   'Reasonable care involves proper inspection, and negligence in respect to it, in such cases as this, is the negligence of the master, and none the less so when the inspection is committed to a servant.'   The rule thus set forth is established by a long line of cases in this court, of which we cite only a few.   Bailey v. R.. W. & O. R. R. Co., 139 N. Y. 302, 34 N. E. 918; Durkin v. Sharp, 88 N. Y. 225; Simone v. Kirk, 173 N. Y. 7, 13, 65 N. E. 739; Byrne v. Eastmans Co., 163 N. Y. 461. 465, 57 N. E. 738; Eastland v. Clarke, 165 N. Y. 420, 429, 59 N. E. 202, 70 L. R. A. 751."

In Simone v. Kirk, supra, the court said, at pages 13, 14, and 16 of 173 N. Y., pages 741, 742 of 65 N. E.:

"Certain work is inherently dangerous, and yet the master has the right to hire servants to do it.   In such cases, however, unless the danger is obvious to an ordinary observer, it is his duty to give them due warning, so that they may refuse to work if they do not wish to run the risk, and proper instructions so that if they enter upon the work they may be able to take care of themselves.   Pantzar v. Tilly Foster Iron Mining Co., 99 N. Y. 368, 2 N. E. 24;   Benzing v. Steinway & Sons, 101 N. Y. 547, 5 N. E. 449;   McGovern v. Central Vermont R. R. Co., 123 N. Y. 280, 25 N. E. 373;   Gates v. State of N. Y., 128 N. Y. 221, 226, 28 N. E. 373;   Eastland v. Clarke, 165 N. Y. 420, 428, 59 N. E. 202, 70 L. R. A. 751;   Finn v. Cassidy, 165 N. Y. 584. 59 N. E. 311, 53 L. R. A. 877;   Dowd v. N. Y., Ont. & W. Ry. Co., 170 N. Y. 459, 63 N. E. 541. There is no complaint in this action as to want of care on the part of the defendants in furnishing suitable appliances for their servants to work with. The crucial question is whether the defendants used due diligence to furnish a safe place, in so inspecting it so as to keep it reasonably safe, and in properly warning the plaintiff's intestate.   These duties were for the defendants

to discharge as masters, and they could not delegate them even to a competent foreman without being responsible for the manner in which they were performed. Whoever, in fact, performed or attempted to perform them, stood for the defendants as their alter ego, and what he did had the same effect in law as if they had done it in person. * * * He had the right to a reasonably safe place, in view of all the circumstances, and to assume that the place furnished was reasonably safe when he began to work, or else due warning should have been given so that he could protect himself, or refuse to work. This was not done, and yet this was the work of the defendants, as masters, which the law does not permit them to delegate to a foreman, unless the latter does it without negligence. When the foreman employed Simone and set him at work on that pile without warning, it was the same in legal effect as if one of the defendants in person had done it knowing of the danger as it then existed."

In these cases the doctrine of details of the work and competent foremen and employés was invoked and prevailed in the Appellate Division, but was held by the Court of Appeals not to apply, for the reason the duty of the master to the servant injured had not been performed. In all these cases there was negligence of the co-servant, or co-employé, or foreman, but this did not exonerate the master or employer for the reason the master's duty had not been performed. See the reasoning of Mr. Justice Brewer in B. & O. R. R. Co. v. Baugh, 149 U. S. 386–390, 13 Sup. Ct. 914, 37 L. Ed. 772, and cases cited. Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390, has no application here, for the reason that there the "foreman or boss of a gang of men" under a general manager of the company who was in control did not represent the master, and the rules stated extend to methods or ways of doing the work. Says Thompson on Negligence, vol. 7 (2d Ed.) p. 313, § 4101:

"Where the work which a servant is set to do may be done in different ways, one of which is dangerous while the other is safe, an employer is under the duty of instructing his servant as to the safe method of doing the work."

I do not need to say that the risk of this danger was one not assumed by Gagnon. The employé never assumes the risk of the negligence of the master. So, if injury results from the concurrent negligence of master and co-servant, the master is liable to the one injured. The jury was repeatedly told that in this case the plaintiff could only recover for the negligence of the defendant itself in failing to inform him of the danger; in no event for the negligence of Evenden or Spore; that, if Spore took the piston head into the shop in disobedience of orders, or without orders, that plaintiff could not recover; that plaintiff could not recover unless they found Evenden directed the head to be taken in to the blacksmith shop and the heating process used and information of the danger not given in case Gagnon was ignorant of it. This was repeated so many times that there was no misunderstanding.

I think the evidence was sufficient to justify and require a submission of this question of the orders given by Evenden to the jury. The credibility of Kehoe was for the jury. Spore was dead. Whether Kehoe was in that machine shop when Evenden and Spore took out the old rod and had conversation as to the work and heard Evenden say

to Spore, "Be careful when you take this out, and not let Sime," referring to the plaintiff, "burn it," was for the jury to determine. As nothing remained to be done except shape the new rod and put it in by some process, and the hydraulic pressure process was not available, only the cold driving process and the heating process remained. The nut drawing process was eliminated. There was no necessity for taking the head to the shop for the driving process and no danger of burning in the driving process. Hence, in view of what Spore and Gagnon did, it was a fair inference that Evenden directed the head and new rod to be taken to the shop and united by the heating process. It is not presumed that Spore exceeded or violated his orders. I think the fair presumption is he acted within his orders. Evenden, as stated, testified that he directed Spore to put in the rod cold in the machine shop and that facilities were there for doing it, but his credibility on this point is questioned as witnesses say he said shortly after the explosion, "D——n it, we forgot to tap it," or words to that effect. If he made these statements, they were inconsistent with his testimony on the trial that he directed Spore to use the cold process, as no tapping is employed in that manner of putting in a new piston rod. The credibility of these witnesses was for the jury as was that of Evenden.

As to the damages, there was no evidence that Gagnon has received less wages since his injury than he did before. He was out nothing. His wages were continued while laid up, and then he was given employment by defendant and later by others at no less wages than he had been receiving. But he suffered pain and permanent disfigurement of one hand. He lost two fingers and that part of the hand immediately below or behind them. His power to lift and handle things is interfered with and lessened. In some stations or businesses his earning power or ability to perform his duties would not be interfered with at all; in others it would be materially. What his future will demand of him cannot be foretold. As a mechanical blacksmith his ability to do work, handle things, is impaired. I do not think the jury was affected by passion or prejudice against corporations. They were carefully cautioned against this. While damages in such cases are largely discretionary with a jury, still that discretion is always within the control of the court. The pain and suffering in this case was not of long continuance, the disfigurement is confined to the one hand, the arm is not injured, the plaintiff can pick up and handle articles and handle all ordinary tools. I am of the opinion that the damages were excessive, all things considered, and that they should be reduced to $3,000.

If the plaintiff files a stipulation within 20 days so reducing the damages, the motion for a new trial is denied; otherwise granted.