## PHILYAW v. ARUNDEL CORPORATION.
### No. 3135.

Circuit Court of Appeals, Fourth Circuit.
June 24, 1931.

D. W. Robinson, of Columbia, S. C. (Joseph T. Davis, of St. Louis, Mo., and W. H. Nicholson, of Greenwood, S. C., on the brief), for appellant.

R. B. Herbert, of Columbia, S. C. (Herbert & Dial, of Columbia, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The administrator of Durand Philyaw brought a suit subsequently removed to the federal court against Arundel Corporation charging that Philyaw was killed by reason of the failure of the defendant to furnish him with a safe place to work when acting as its employee in the operation of a steam shovel in the construction of a dam across the Saluda river in Lexington county, S. C. There was no complaint that the machinery was defective, but it was said that the deceased was an inexperienced employee and was not properly warned as to a certain danger attending the adjustment of the apparatus upon which he was engaged as an assistant at the time of the fatal injury.

The steam shovel was of the usual construction and contained three engines. Two were in the cab of the machine and were used to operate the boom and the bucket at the end of the dipper stick. The third engine was located on the boom between two parallel steel beams about two feet apart, which formed the framework of the boom. Just

outside of the beams and alongside of the engine on either side, two bull wheels were mounted. This arrangement was used for the operation of the dipper stick which was so adjusted that it slid back and forth between the wheels in order that the bucket at the end might reach the earth to be excavated and be withdrawn to deposit it at the point desired. Over the boom engine between the steel beams and the bull wheels, there was a grease cover or lid designed to keep out the dirt, which was four feet long and twenty inches wide and weighed about fifty pounds.

C. E. Heath operated the engines in the cab and had full charge of the work, while J. T. Lee, an experienced engineer and machinist, ran the engine on the boom. Philyaw was subject to the orders of both. On the morning of the accident, the dipper stick worked sluggishly and Lee believed that the difficulty was due to a tight bearing. Consequently he gave the proper signal and stopped his engine; whereupon Heath stopped the engines in the cab and the machinery came to rest. Lee then got certain tools and ascended to a place on the boom alongside and to the left of the engine, facing the bucket or shovel. He reached over the steel beam, lifted up the cover of the engine, and supported it upon his arm and shoulder while he tried to make adjustments to the machinery. At this moment Philyaw, the deceased, came up on the right-hand side of the boom opposite to Lee, whereupon Lee told him to hold the grease cover and was thereby left free to use both hands upon the engine. Philyaw obeyed, thrusting his arm between the spokes of the right-hand wheel. Since the men were scarcely two feet apart, Philyaw's attitude was easily visible to Lee. In fact, in one part of his evidence, which is not altogether consistent on this point, Lee gave testimony tending to show that he knew that Philyaw's arm was between the spokes of the wheel. If he did not know it, it was only because he was intent upon the engine rather than upon the safety of his assistant. Philyaw's action was a dangerous thing to do, as it afterward transpired, notwithstanding the fact that the machinery was not in operation. The dipper stick was so adjusted that when the power was shut off, the stick would slide one way or other, turning the wheels until it reached the center of gravity and was supported at a point of balance. On the occasion in question, it turned out that the dipper stick was stuck, and when the pressure was released, it slid naturally into a place of rest, causing the accident.

Although Lee knew of the danger, he gave no warning to Philyaw but proceeded with the work. There were a number of other ways in which the cover could be safely held up, but the evidence shows that it was a natural and not an unheard of thing for a person to put his arm through the spokes of the wheel while at rest. Lee testified that although he knew the danger, he himself had put his arm in this position both before and after the boy was killed.

Lee believed that there was a tight bearing, by reason of which the dipper stick would not pass back and forth through the boom easily and to its full extent. In order to ascertain whether his theory was correct, he used a hammer upon the connecting rod, knowing that if in fact the trouble was caused by the bearing being a little too tight, the tap of the hammer would tend to make the engines move. As a matter of fact, when the hammer was used the engines did move at once. The dipper stick slid in towards the cabin, and the bull wheels revolved, catching the arm and shoulder of Philyaw between the spokes of the wheel on his side and the boom of the steamshovel, so that he was crushed and killed.

█ There seems to be no doubt from this recital of the facts that the evidence tended to show negligence on the part of Lee, an experienced man, in ordering or permitting his assistant to thrust his arm between the spokes of the wheel while the engine was being tested. It seems equally clear, from the following recital of facts, that the evidence tended to show that Philyaw was an inexperienced workman, unaware of the risk which he ran. He had never been warned as to the danger of putting his arm through the spokes of the wheel. He was nineteen years of age and an intelligent boy. He had graduated from high school on May 20, 1929; had gone to work on June 1, and was killed on October 24. He had had no training as a machinist, and this was his first job. The only warning which he had received prior to the accident was a general one that he should stand clear of the shovel when the train of cars came in to receive the dirt to be carried away. His work was that of an oiler and it was his duty to oil the machinery while it was at rest between the departure of one train and the arrival of another. This general warning was of no help in this case for the reason that the machine was not in operation at the time, and the warning thereafter had no application. He had of course had some opportunity during the term of his employment to observe the

general operation of the steam shovel and particularly of the boom, but there is nothing in the record to indicate that he had any reason to believe or suspect that the dipper stick would slide one way or the other when he thrust his arm between the spokes of the wheel. The evidence was not so clear that it could be said as a matter of law that the danger was so obvious to him that he assumed the risk.

At the conclusion of the plaintiff's case, wherein the facts above recited were brought out, the court directed a verdict for the defendant on the ground that there was not sufficient evidence of neglect or failure in any of the duties of the defendant, as master of the deceased, to warrant the case being sent to the jury. We have seen, considering the testimony in the light most favorable to the plaintiff as we are obliged to do, that there was evidence tending to show that the deceased was so inexperienced that he could not be held to have assumed the risk of the accident which caused his death, and also that there was evidence tending to show that the engineer in charge of the boom engine was neglectful in failing to warn the deceased of the risk which he was running at the time of his death. We think that the correctness of the ruling of the court depends in the main upon whether there was a violation of the nondelegable duty of the defendant to warn the deceased as to the hidden danger involved in the work, or whether, on the other hand, the fatal accident was due simply to negligence of a fellow servant for which the defendant was not responsible.

The rules governing the responsibility of the master to furnish a safe place to his employees to work and to warn them as to the dangers of the employment, on the one hand, and the lack of responsibility of the employer for the negligence of a fellow servant of an injured employee, on the other, when the master has once performed his duties, are well established. It has been succinctly said by Judge Sanborn:

"The duty of the employer is one of original construction and provision. The duty of the employee is one of operation. The employee assumes the ordinary risks and dangers of his employment, and among these the risks and dangers of the negligence of his fellow servants in the performance of the work including the risk and danger of the negligence of his superior, be he foreman or superintendent, who in his direction or failure to direct the operation of the work is his

fellow servant." Missouri Valley Bridge & Iron Co. v. Walquist (C. C. A.) 243 F. 120, at page 124.

"All who enter into the service of a common master, except those who become heads of and vested with absolute control of separate departments or branches of a great and diversified business, thereby become engaged in a common service and are fellow servants in all they do, except that which they do in discharge of the master's nondelegable duty of provision. And in the absence of a statutory provision to the contrary each servant, by accepting his employment, voluntarily assumes the risk and danger of the negligence of his fellow servants in the discharge of all their duties of operation, whether those duties are those of superintendence and direction, or those of equal or subordinate service." Union Pac. R. Co. v. Marone (C. C. A.) 246 F. 916, at page 923. See also Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772; New England R. R. Co. v. Conroy, 175 U. S. 323, 20 S. Ct. 85, 44 L. Ed. 181; overruling Chicago, Milwaukee & St. Paul R. v. Ross, 112 U. S. 377, 5 S. Ct. 184, 28 L. Ed. 787; Texas & Pacific Ry. Co. v. Bourman, 212 U. S. 536, 29 S. Ct. 319, 53 L. Ed. 641.

The real test, according to Judge Watkins, speaking for this court in James Stewart & Co. v. Newby, 266 F. 287, at page 294, "is whether the master has intrusted to such one the limited duty of mere operation on the one hand, or a broader duty involving provision on the other. When one is charged with a nondelegable duty of a master, liability for his negligence thereof exists, if injury is thereby caused to another servant of any rank whatever, superior, equal, or inferior. Since, however, all who enter a common employment are prima facie fellow servants, in order to render the master liable specific testimony must be produced to show that the offending servant is charged with some duty of provision, and not merely the ordinary service of operation." In that case the court held that it was error to direct a verdict for the defendant where there was evidence to show that the breaking of a boom used to raise a heavy timber from a pier to a scow, by which a workman on the scow was injured, was due to the improper placing of the scow by the foreman in charge.

It is not always easy in a given case to determine whether the negligent act or omission should be classified as one of provision or one of operation; and it is quite impossible to

reconcile the decisions, state or federal, which have attempted to solve the difficulty. It arises because accidents in the factory, in the mine or quarry, or on the railroad, usually take place in the course of the actual operation of the business, and in one sense it is always true in such cases that the duty of operation was being performed by the fellow servant of the injured man. But this sense is not intended in the statement of the rule, for otherwise the duties which the master must perform at his peril could be delegated with impunity to his subordinates. On the other hand, the rule does not contemplate that every danger which arises in the course of the work through the carelessness of the master's servant shall be treated as a failure of the master to furnish a safe place to work, or that every neglect of his employees to give warning of an unseen danger shall be considered as a failure of the master to warn or instruct, for if this were the case, the exemption of the master from liability for the negligence of fellow servants of an injured employee would cease to exist. The circumstances must determine into which category the negligence complained of falls, and it is not possible to enunciate a more definite formula by which each case may be solved than to say that in each instance the court must determine whether or not the negligent fellow servant was engaged at the time in performing a nondelegable duty of the master.

By way of illustration, it has been held that the failure of a fellow servant to give warning of an impending danger should not be imputed to the master, when a mine boss failed to give to the injured man, who was engaged in breaking rock at the top of a chute, the usual notice that he should descend because the chute was about to be opened, Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 S. Ct. 40, 42 L. Ed. 390; or where a workman on a hand car on a railroad was injured by collision with a train because the foreman in charge of the gang failed to keep a proper lookout, Martin v. Atchison, etc., R. Co., 166 U. S. 399, 17 S. Ct. 603, 41 L. Ed. 1051; or where a workman employed beneath a car in making repairs was injured by a collision with an approaching car because a fellow employee stationed outside failed to give the proper warning, Southern Pacific Co. v. Pool, 160 U. S. 438, 16 S. Ct. 338, 40 L. Ed. 485; or where the mate of a vessel engaged in between decks in loading lumber thereon was injured by reason of the failure of one of the men on the wharf to give warning that a piece of lumber was being sent down the chute, Hermann v. Port Blakely Mill Co. (D. C.) 71 F. 853.

On the other hand, the employer has been held liable for failure of a subordinate to give warning of a danger arising in the course of the business, where a laborer, chiefly engaged about a hoisting engine in a quarry, and with no experience in blasting, was ordered by his boss to dig out the tamping from a hole which had been filled with explosives but had failed to go off, Peters v. George (C. C. A. 3d) 154 F. 634; and where a laborer in a mine was injured by the fall of a drain pipe supported by wooden props which a fellow employee had been ordered to disconnect, Kentucky Block Cannel Coal Co. v. Nance (C. C. A. 6th) 165 F. 44; and where a man at work under a car was injured because his foreman, without warning, caused the car to be moved, American Car & Foundry Co. v. Rocha (C. C. A. 8th) 257 F. 297; and where an engineer, inexperienced in such matters, having been ordered by his chief from his regular duty to assist in testing a new electric motor, was injured by the action of the chief in turning on the current after the motor had become heated and dangerous, American Car & Foundry Co. v. Brinkman (C. C. A. 7th) 146 F. 712; and where an inexperienced stevedore foreman, employed in coaling a vessel, was injured by a fall of coal from an unguarded chute, Panama R. Co. v. Minnix (C. C. A. 5th) 282 F. 47. See also Gagnon v. Klauder-Weldon Dyeing Machine Co. (C. C.) 174 F. 477; Id. (C. C. A.) 183 F. 962; Force v. Standard Silk Co. (C. C.) 160 F. 992; Id. (C. C. A.) 170 F. 184; Thomas v. Cincinnati, etc., Ry. Co. (C. C.) 97 F. 245; Western Electric Co. v. Hanselmann (C. C. A. 2nd) 136 F. 564, 70 L. R. A. 765; Lehigh Valley Coal Co. v. Lukaszunas (C. C. A.) 230 F. 792; Freedom Casket Co. v. McManus (C. C. A.) 218 F. 323; Alpha Portland Cement Co. v. Curzi (C. C. A.) 211 F. 580; Montana Coal & Coke Co. v. Kovec (C. C. A. 9th) 176 F. 211; Mountain Copper Co. v. Pierce (C. C. A. 9th) 136 F. 150; International Paper Co. v. Robin (C. C. A. 1st) 167 F. 922; John Lang Paper Co. v. Zacheyfia, (C. C. A. 3rd) 178 F. 253; Chesson v. Walker & Myers, 146 N. C. 511, 60 S. E. 422.

In our opinion, a duty to warn the deceased on the occasion of the accident in the case at bar devolved upon the defendant company and could not be delegated to his fellow workman on the job, if we assume, as the jury might have found from the facts before it, that the injured man was directed to

do work outside the scope of his usual duties and was knowingly permitted to perform it in a dangerous manner without knowledge of the danger and without warning of any kind. For the neglect of such a duty, an employer must bear the responsibility. We can do no better than to quote from the opinion of Judge Munson in Hayes v. Colchester Mills, 69 Vt. 1, 37 A. 269, 271, 60 Am. St. Rep. 915, where a young boy, employed as a helper around a spinning room of a mill for about two years, was directed by Sturgis, his foreman, to ascend a ladder so as to be able to hold a belt from a revolving shaft in order that the belt might be repaired. He was not warned of the danger of the situation, and as the result, lost an arm. Holding that the employer was liable for the foreman's neglect, the court said:

"The plaintiff was suddenly called upon to perform a service which was essentially different from any he had before undertaken. The danger of the service lay somewhat in the place where it was to be done, and the position it was necessary to take in doing it. It cannot be assumed from the fact that the plaintiff knew in a general way of the movement of the shaft, and its effect upon a belt, that he so understood the dangers connected with the performance of this particular service that the caution and instruction of an experienced workman would have been of no benefit to him. We think the plaintiff's knowledge in the respects stated will not justify us in holding, as matter of law, that he was not entitled to caution or instruction under the circumstances disclosed by his evidence.

"It being for the jury to determine whether instructions should have been given the plaintiff, it is necessary to consider whether any omission of Sturgis in this matter was the negligence of the defendant. It is evident that the right of an employee to receive instructions cannot be made to depend upon the presence of the employer or his general representative. The duty must often rest upon the one whose order creates the necessity for the instruction. In such a case the employer cannot excuse himself for the employee's failure to receive instruction by saying it was the neglect of a fellow servant. If it became the duty of the defendant to instruct the plaintiff, the performance of that duty devolved upon Sturgis, and any negligence of Sturgis therein would be chargeable to the defendant. This holding is not upon the ground that Sturgis was not a fellow servant of the plaintiff in the general sense, but upon the ground that his connection with the plaintiff in this transaction was such that, when occasion arose for instructing the plaintiff, he was in that matter the representative of the defendant. When an employee, although a fellow servant of the injured employee, is charged with the master's duty to such employee, his failure in that duty is the negligence of the master, and the doctrine of fellow servant does not apply."

The judgment of the District Court must be reversed.