### JOHN LANG PAPER CO. v. ZACHEYFIA.

(Circuit Court of Appeals, Third Circuit.   February 16, 1910.)

No. 61. (1.254).

MASTER AND SERVANT (§ 286*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—
DUTY TO WARN AND INSTRUCT.

Plaintiff, who was a Polish boy 17 years old, worked in defendant's paper mill as a laborer for five months, wheeling pulp to, and the finished paper from, the machines, which stood in pairs, end to end, with a space of only about 15 inches between the wet and dry machines. Across this space was an endless felt carrier or belt for conveying the pulp from one machine to the other which frequently required repairing or tightening. Plaintiff and another workman were called by the machine tender to help adjust the conveyor, in doing which it was necessary to pass sideways into the space between the machines and lie on the floor. In attempting to get out from such position, plaintiff's hand was caught and crushed between the rolls of one of the machines which had not been stopped. The only negligence charged against defendant was in failing to warn and instruct plaintiff with respect to the admitted danger of the place: he being unskilled, speaking little English, and with no knowledge of the machines except that gained in his work. *Held*, that whether

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the giving of such warning and instruction, under the circumstances shown, was an absolute and nondelegable duty of defendant as master the omission of which rendered it liable, was properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1044–1050; Dec. Dig. § 286.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by John Zacheyfia against the John Lang Paper Company. Judgment for plaintiff (170 Fed. 617), and defendant brings error. Affirmed.

W. W. Smithers, for plaintiff in error.

Thomas Leaming, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. The action in the court below was brought by the defendant in error (hereinafter called the plaintiff) against the plaintiff in error (hereinafter called the defendant), wherein it was charged that plaintiff had lost his right hand by reason of the negligence of the defendant, and claiming damages therefor. The material facts disclosed by the record are as follows:

The defendant owns and operates a paper mill in Philadelphia, in which a large number of workmen are employed, and in which there are many complex machines driven by steam power. Two sets of paper making machines occupied nearly the whole floor of a large room in defendant's mill,—one set on each side thereof, extending about 70 feet in length, 7 feet 6 inches in width, and over 10 feet in height. Each set was composed of two parts, known as the wet machine and the dry machine. Between these machines, an endless felt or blanket, passing around rollers of each, received the wet pulp, which had come over and between certain cold rollers of the wet machine, and further conveyed it across the narrow space between the two machines to the rolls of the dry machine. This space varied in width from 20 to 15 inches at the narrowest point. It is not contradicted that the space was so narrow that a man, to go in between the machines, would have to go in sideways. This blanket, which carried the pulp from the wet machine to the dry machine, was sewed together at its ends and was moved in an endless circuit by opposite rollers in the two machines. It was liable to be torn, or to otherwise get out of order. When so torn, it became necessary to remove it and substitute a new one. Sometimes it was necessary to tighten the tension, by means of one of the rollers under the machine, which was so arranged that it could be moved in a slot for that purpose. These renewals or rearrangements were not a part of the process of making paper, but appertained to the keeping of the machine which manufactured the paper in proper order and repair. The necessity for such renewals, repairs, or tightening of tension, of course, occurred at irregular intervals. When the cloth was being adjusted in the wet machine, there was no mechanical connection between that part and the dry machine, the two being

capable of independent operation and working in unison only when connected by the cloth conveying the pulp. Those who renewed or adjusted the cloth were obliged to go sideways into the narrow space between the two machines and to stoop down or lie on their stomachs to get under the dry machine, in order to stretch the cloth on the adjustable roller thereof.

The plaintiff, a Polish boy of 17 years of age, was employed as a laborer by the defendant company. If he spoke English at all, he spoke it very imperfectly, and had, previous to his employment, been a farm laborer. He had been employed about five months as a helper on one of these machines. He had first been put at shoveling the pulp into the wet machine, at its extreme south end, and, about three weeks before the accident, had been placed at the extreme north end of the dry machine, to wheel away the rolls of the finished paper. He and another boy helper were subject to the orders of a skilled machine tender, who was a paper maker by trade. The plaintiff had, upon about six occasions, under a boss preceding the one in charge of the machine when the accident happened, been ordered to help in stretching the blanket when it was being adjusted. Of course, while this was being done, the wet machine was not in operation, and plaintiff's witnesses testified that under the former boss, both machines stood still during such repairs, while defendant's witnesses testified that it was not customary or necessary to stop the dry machine when such repairs were being made. Plaintiff was not a skilled workman, and the only knowledge he had of the machinery was such as he could acquire from his work as a laborer in the positions above mentioned. The plaintiff's testimony as to the happening of the accident is, as follows:

"Q. Just tell the jury in your own way exactly what happened.

"A. When I came to work the boss called two of us, he called us to change a cloth.

"Q. Who was the other person that he called beside yourself?

"A. Mr. Wangloz.

"(Mr. Wangloz stands up.)

"Q. Is that the person that the boss called?

"A. Yes, that is the same man. Wangloz went under the machine first, and I went under second. Wangloz went under first, then I went under myself.

"Q. Then you went under yourself?

"A. Then myself, and after that the boss went under.

"Q. How did you get under?

"A. We went in sideways.

"Q. Went in what sideways?

"A. Went between the machine sideways, and went down on our knees, laid on our stomachs.

"Q. When you were laying on your stomach, what was over you?

"A. The machine.

"Q. Go on and tell us what happened?

"A. Then we were pulling the roll with a cloth, they were pushing and I was pulling, and they could not pull it in place, and the boss called and said, 'Get out.' and swore, and kicked me on the foot.

"Q. Then what happened?

"A. And I went and got from under the machine. It was tight there, and all at once I got my hand caught, I don't know how."

As a witness on behalf of the defendant, the man in charge of the machine testified that he only called Wangloz, and did not call the

plaintiff, to help him adjust the cloth under the machine; that the two were standing together, and, as plaintiff testifies, he called them by. waving and pointing to the place where he wanted them to go, and besides, this witness was. contradictory in his statements, testifying at one time that the plaintiff's proper position was upon his knees between the two machines, and not under the wet machine. This question, however, was submitted to the jury, and they have found in favor of the plaintiff.

It is conceded that the dry machine was in operation after the plaintiff went in between the two machines and at the time of the accident, and that the rollers nearest him were slowly moving, and that the loss of his hand was due to its being caught between them. The verdict was for the plaintiff, and upon a refusal of defendant's motion for judgment non obstante veredicto, judgment was entered for the plaintiff upon the verdict. Upon the writ of error sued out by the defendant, all the evidence is sent up in the record under the Pennsylvania practice act.

The propositions urged in this court upon the assignments of error, are:

First, that the proximate cause of the injury was no act of the defendant; that the plaintiff was not caught by the projecting machinery, nor could he have been injured by mere contact of the body. It is urged that there was no evidence that the speed of the rollers was such as to draw in his hand. On the contrary, steam had not been on long and the speed was "slow" just before the men began to adjust the cloth. It is argued, therefore, that the injury must have resulted, either from plaintiff's slipping and thrusting his hand against the rollers at their line of contact, or from gross carelessness in putting his hand there without looking.

Second, the situation being transitory and arising from the usual operation of machinery under the direction of a fellow servant, its dangers were among the assumed risks of the employment.

In the general views we are about to express, we will dispose of both of these propositions together.

That the place into which the plaintiff was required to go, by the order of the foreman under whom he was working, was one of extraordinary danger, by reason of the narrow space between the two machines, the moving rolls of the dry machine forming one side of said narrow space, and by the fact that he was required to lie upon his stomach in order to get under the rolls of the wet machine, and the cramped conditions under which he was compelled to recover himself from that position must be conceded. The testimony is conflicting as to whether the rolls of the dry machine were in motion when 'the plaintiff went in under the wet machine, but that they were undoubtedly moving when he sought to extricate himself from his lying down posture, as the loss of his hand was due to its being caught between two of these moving rollers.

Assuming, as defendant contends was the fact, that the rolls of the dry machine were moving when the plaintiff went in between the two machines, counsel for defendant urge with great ingenuity of argu-

ment, that, inasmuch as the declaration did not charge on the defendant negligence of an absolute duty of a master, in allowing the dry machine to be in operation while men were engaged under the wet machine in making these repairs, recovery could not be had by the plaintiff, because the danger arising from the moving rolls of the dry machine was an obvious one, and was observed, or should have been observed and appreciated by the plaintiff when he entered the space between the two machines, and the risk of injury therefrom was assumed by him. The conclusion from these premises is, that the proximate cause of plaintiff's injury was no act of the defendant.

Although the plaintiff in his pleading has made no allegation of a breach of duty by the defendant, in that he allowed the dry machine to be operated while plaintiff was under the rolls of the wet machine, did not the defendant owe an absolute master's duty in another respect to the plaintiff? Under all the circumstances of the case, was it not defendant's duty to warn him of the danger to be encountered when ordered to penetrate this narrow passage between these sets of complicated machinery, one set of which was in motion when he was required to crawl under one of them to assist in making repairs, the plaintiff being an ignorant Polish boy between 17 and 18 years of age, with no special knowledge of this complex machinery, except that obtained as a laborer in wheeling material to the machine at one end, and wheeling finished product away at the other. The neglect of such a duty is the negligence charged by plaintiff in his statement of claim. Whether the work that plaintiff was ordered to do at the time of the accident was of such extraordinary danger, by reason of the conditions above described, as to impose upon the defendant the duty of warning him thereof, and giving him instructions in regard to the same, was a question which, in our opinion, might at least be properly submitted to a jury. The fact that plaintiff had several times before helped at this work, did not necessarily absolve the defendant from such a duty. It may well have happened on those occasions, either that the rolls of the dry machine were not revolving, or that, in getting up without slipping or staggering, he did not appreciate the danger that might arise from their being operated. It is altogether probable, as suggested by defendant, that the accident may have happened while plaintiff was struggling to arise on the uncertain footing of the narrow gutter, that he slipped or staggered, and involuntarily threw out his hand against the moving rolls.

The question whether, under all the circumstances to which we have alluded, an absolute and nondelegable duty was imposed upon the defendant, of giving such instructions and warning to the plaintiff as would enable him to appreciate and avoid the dangers of the situation in which he was required to work, was submitted to the jury in an admirably clear and discriminating charge by the trial judge, a charge that was eminently fair to the defendant in stating this and every other question of fact submitted to the jury.

This court has said in a recently well-considered case:

"The general and personal duty imposed by law upon a master, to use reasonable care,—that is, care in proportion to the exigencies and danger of the situation, to safeguard the place and conditions in which and under which

an employé is to work, certainly required that such a person as the plaintiff was, in respect to experience and intelligence, should have been specially warned as to the danger of the work he was ordered to do, if, indeed, under the circumstances shown, he should have been allowed to attempt the work at all." Peters et al. v. George, 154 Fed. 634, 83 C. C. A. 408.

An absolute and primary duty of this character cannot be delegated by the master to a servant, of whatever grade he may be. As said by this court in the case just referred to:

"The question is always, whether the negligence charged is the neglect of a primary and absolute duty of the master to the servant. If such be its character, no delegation of the performance of that duty to another, no matter how inferior his rank may be in the master's service, can * * * relieve the liability of the master for its neglect."

The question, whether or not such a duty under the circumstances of this case was imposed upon the master, was the precise question upon which the jury were given to understand that the case turned. After stating that there was no charge made by the plaintiff that the machinery was in any respect defective, or that there was any neglect on the part of any of his fellow servants, the trial judge uses this language:

"He (the plaintiff) puts his case entirely upon what he says was a breach of the defendant's duty to give him information and warning concerning the danger of a particular place where he was called upon to do work as a servant."

We think the court below was clearly right in refusing the motion for judgment non obstante veredicto, and the judgment below is hereby affirmed.